STATE *ex rel.* ATTORNEY GENERAL *v.* MIZE *et al.*

(In Banc. June 14, 1948.)

[36 So. (2d) 143. No. 36809.]

Harold Cox, of Jackson, and Greek L. Rice, Attorney General, by Jas. T. Kendall, Assistant Attorney General, for appellant.

O. B. Triplett, Jr., of Forrest, for appellee.

Griffith, J., delivered the opinion of the court.

Appellee, Mize, was State Sotor Vehicle Commissioner for a period of five years and some months. During that period he handled for the State more than ninety-two million dollars. There was an investigation by a legislative committee as a result of which a suit was instituted by the State against the Commissioner to recover the sum of $1,060 which the relator charges the Commissioner failed to collect when he should have done so.

Counsel for appellee suggests that the demand is for aproximately one cent on each thousand dollars handled, and we interpret his suggestion as invoking the rule de minimis non curat lex. We find that it is not probable that the State lost anything by what the Commissioner did as to the item more particularly to be hereinafter discussed, wherefore we have no need to consider the de minimis rule, if applicable in such a case as this, which we doubt.

As to all the items, except the one to be particularly mentioned, it is our judgment that the chancellor was correct, for the reasons stated by him, in disallowing them, and we concur in his opinion in which he dealt with them in detail.

It is only as to the one item of $271 that we have had any difference of opinion. Section 9362, Code 1942 (Sec. 10, Chapter 148, Laws 1938), dealing with motor vehicle permits and the license tags therefor, contains the following provision: "Provided that the sheriffs of the several counties shall be entitled to retain $1.00 as his full compensation for each application for license tag received by him and forwarded to the Commissioner for license tag to be issued by said Commissioner . . ."

An operator sent direct to the Commissioner by mail two applications for a total of 271 license tags. Along with the amounts calculated as due to the State, for which the operator sent two checks payable to the Commissioner, he sent two other checks payable to the sheriff for the aforementioned sheriff's tag fees, the latter two checks aggregating $271. The clerk in the Commissioner's office assuming that the applications had been sent after consultation with the sheriff and at his direction complied with the request of the applicant to send the sheriff's checks to him, and for this it is contended that the Commissioner is liable to the State for the $271.

The action of the applicant in sending the checks separately made out to the sheriff is sufficient proof that

the applicant knew of the statute and its provisions and it amounted to an assertion by the applicant that the sheriff was entitled to the fees represented by the separate checks payable to the sheriff, which in turn amounted to an assertion that the sheriff himself or through some agent or appointee had performed some such service in respect to the applications as would entitle the sheriff to the fees. Certainly and in any event it was sufficient to put the Commissioner on notice as to the asserted interest of the sheriff in the remittance as tendered and that the applicant was alertly mindful of it; and this introduces familiar rules respecting tender of payment.

When a party tenders a payment to another, the latter must accept or reject the tender as made. If he accepts he is bound by all terms of the tender and he can avoid it only by return of the tender. Inasmuch as according to relator's contention the Commissioner, because of his public office, could not validly accept the tender as made it was his duty, the same as that of a private payee, to return the tender and all of it.

Now what, in all probability, would have happened had the Commissioner returned the tender to the appellant? In all probability the applicant would have telephoned the sheriff, or otherwise would have got in touch with him, whereupon the applications would have been forwarded directly by the sheriff himself, retaining his $271 in fees, with the result that the State would have received exactly what it did receive with the difference of a delay in the receipt.

The facts recited are entirely sufficient to justify the inference of the stated probability, and to shift to the State the burden of procedure to rebut it, which the State made no effort to do, so that upon the record as it stands the probabilities are that the State was not harmed by what the Commissioner did as to which it is to be added that in civil cases courts act upon reasonable probabilities and not upon certainties. This we think is all that is nec-

essary to be said on the question and the decree will be affirmed in its entirety.

Affirmed.

· **Roberds, J.,** delivered a partially concurring opinion.

I concur in the main opinion except as to the item of $271. In my opinion the Commissioner as to that, misconstrued the law, and is liable for that sum. As stated in the opinion, these applications were sent direct to the Commissioner. There is no proof whatever that the sheriffs ever heard of them until they received the checks from the Commissioner, nor is any justifiable reason disclosed leading the Commissioner to believe the sheriffs knew of the applications. Apparently in providing the applications might be filed with the sheriffs the Legislature had in mind two things; First, a convenience to the taxpayer, in that he might more conventiently file the application with some sheriff than with the Commissioner, and, second, that the sheriff would perform the services required by the statute and for which one dollar is paid him—that is, take the application, supervise its proper preparation, and forward it to the Commisioner. The law never contemplated a donation to the sheriffs of the State's money without any service or responsibility whatever on their part. Nor does it permit the taxpayer to choose and designate for his own benefit one to whom he desires the dollar paid. If the money is not paid the sheriff it must be paid the State. It is the State's money. Here the sheriffs did nothing whatever, and, so far as this record shows, had no knowledge of the applications until they received from the Commissioner checks of the taxpayers made payable to them as pure gratuity.

**L. A. Smith, Sr.,** and **McGehee, JJ.,** concur.