McKENDRICK, et al. *v.* LYLE CASHION COMPANY, et al.

No. 40766          July 3, 1958          104 So. 2d 295

October 6, 1958                    105 So. 2d 480

November 17, 1958                  106 So. 2d 509

*Teller & Biedenharn,* Vicksburg; *O. B. Triplett, Jr., Frank F. Mize,* Forest; *Barnett, Jones & Montgomery,* Jackson; *B. D. Statham,* Magnolia; *Howie, Howie & Montgomery,* Jackson, for appellants.

*Brunini, Everett, Grantham & Quin,* Vicksburg; *Thomas J. Malletts, M. J. Peterson,* Jackson, for appellees.

HOLMES, J.

The paramount question in this case is whether the appellants, after being duly notified of the determination to drill the Allen Well No. 6 and the Allen Well No. 7, complied with the terms of the operating agreement dated October 11, 1954, by advancing or legally tendering their share of the estimated cost of the drilling operations. The determination of this question is in our opinion decisive of this appeal. In saying this, we are not unmindful of the contention of the appellants that the record fails to show that the drilling of the two wells in question was timely commenced under the provisions of

the operating agreement. This contention of the appellants was not made an issue in the pleadings or on the trial below, and we dismiss it as not being well founded.

The authorities relied upon by the appellants are sound under applicable facts. We think, however, that they are not controlling under the facts of this case. It is not contended that the appellants actually advanced or tendered their share of the estimated drilling costs unless it be that their offer to permit the appellees to withdraw from the interpleaded funds a sum sufficient to cover such costs is to be deemed a sufficient tender of such funds. We do not think that such offer should be so construed under the facts of this case. The rights, duties and obligations of the parties should be measured by the terms of the operating agreement. This agreement imposed upon the appellants the obligation to advance their share of the drilling costs. They did not do so but offered to permit the appellees to withdraw from the interpleaded funds a sum sufficient to cover such costs. These interpleaded funds were not in the possession of or under the control of the appellees but were in litigation. We think, therefore, that such offer was not sufficient to meet the obligation of the appellants to advance their share of the drilling costs, and that under the terms of the operating agreement the appellants should be adjudged to have no further interest in the wells in question. The chancellor so held and we are of the opinion that the decree of the court below should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.

## ON SUGGESTION OF ERROR

Ethridge, J.

Appellants contend that Cashion was obligated by a contract to advance for McKendrick the drilling costs for

Allen wells nos. 6 and 7. See 104 So. 2d 295. This argument is based upon the terms of a contract dated October 11, 1954, constituting a statement of account as to past transactions between Cashion and McKendrick. In that instrument these parties stated the previous operating accounts between them, showing McKendrick owed Cashion in excess of $35,000. Paragraph (7) provided: "In addition to the amounts expended heretofore by Cashion in the drilling, development and operation of said lease, it is contemplated and understood by the parties that Cashion will advance to McKendrick additional sums of money for drilling, development and operation of the said lease, estimated to be $27,650.89 and for payment of a note in the amount of $25,000.00 executed by Everette Truly and others of the undersigned in favor of City Bank & Trust Company, Natchez, Mississippi, and that McKendrick will make certain payments to Cashion for which the necessary and proper entries will be made on the books of Cashion."

There is no direct evidence to indicate the purpose of paragraph (7). It was executed along with three other instruments on or about the same date, which should be considered together. One of them was an assignment by Cashion to McKendrick and others of a 22/64th interest in the Allen lease, dated October 11, 1954. It stated that it was a compromise and settlement of the differences between the parties as to the Allen lease and a full settlement of such differences.

The third instrument, dated October 12, 1954, and part of the settlement as to the Allen lease, was a ratification by assignees of McKendrick of the compromise agreements.

The fourth and principal contract between the parties was a joint operating agreement, dated October 11, 1954, in which Cashion was designated as the operator of the wells on the Allen lease. It was signed by Cashion, McKendrick, and his assignees. It placed Cashion in charge

of development operations "under said joint lease in accordance with the agreements and provisions hereinafter contained." Paragraph (2) provided that expenses, wages, etc., shall be charged by the operator to the owners in accordance with the accounting procedures as set forth in an exhibit to the joint operating agreement. Paragraphs (4) and (5) set forth in detail the manner in which a non-operator can participate in new wells, by advancing to operator its share of the estimated costs of such operation, according to a carefully specified timetable. We have construed this to mean payment in cash by the non-operator. Paragraph (10) provided that the joint lease shall not be operated as a partnership, but liability shall be several. It stated: "Each party shall be responsible only for its obligations as set out herein and shall be liable only for its proportionate share of the cost of operation hereunder." This lengthy contract provides in specific detail numerous rights and liabilities of the parties, and operating procedures.

The question is whether, reading together these four instruments, which are *in pari materia,* paragraph (7) of the statement of account can be said to constitute an agreement by Cashion to advance to McKendrick money to pay his share of the costs for drilling Allen wells up to the stated amount, which can be invoked in this Court for the first time. We do not think so.

The bill of complaint charged that McKendrick was entitled to participate in the two wells for three reasons. One was that appellants had offered to permit Cashion to obtain costs from Sherman Oil Company, appellants having assigned their interest to Sherman. This contention was abandoned by appellants in their stipulation.

Appellants further charged in their bill that they had executed a deed of trust to Cashion upon their interests, upon the security of which Cashion was to loan McKendrick the money to pay for his share of the costs. Appellees denied in their answer that this was its purpose. Appellants did not undertake to prove any such offer and

did not show any offer under paragraph (7), and there is no evidence to sustain a claim of that sort. So, in effect, appellants have abandoned this contention, and in the trial court and here, except in their reply brief and suggestion of error, they have relied solely upon their claim that they tendered the interpleaded funds and this was sufficient.

On the trial the parties entered into a stipulation that in substance there should be no issue of fact presented to the Court. The stipulation, after reciting the offer to permit use of the interpleaded funds, and the refusal of that offer by Cashion, stated: ''No tender of cash was ever made by Charles S. McKendrick and the other complainants, unless the offer recited hereinbefore constitutes such a tender.'' In paragraph (10) of the stipulation, appellants agreed that they were not able to obtain the funds demanded by Cashion ''except by their offer to pay their share out of the impounded funds.''

The effect of this stipulation was a clear recognition by appellants and an agreement by them that they were relying only on the tender of the interpleaded funds. It was an abandonment of the contention made in the bill that Cashion had a contractual obligation to advance the funds. When this stipulation agreement is considered along with the fact that appellants offered no evidence whatever to support any claim that they had asked Cashion to advance them funds under paragraph (7) of the statement of account, it is manifest that this contention of appellants is without merit on appeal.

■■ ■ The case was tried solely on the theory and issue of whether there was an adequate tender of the interpleaded funds. Appellants cannot on appeal for the first time change that theory. In addition, the only tender, according to the stipulation, was from the interpleaded funds. ■■ ■ Appellants made no tender or request under paragraph (7). Of course, a tender is confined to the terms upon which it is made. It should

not be broadened by the courts to extend to collateral provisions not covered by the tender itself.

Of equal importance, the accounting agreement must be read along with the joint operating agreement. The latter deals specifically with drilling new wells on the Allen lease, and specifies the methods non-operators must follow in order to participate in a new well. The general terms of paragraph (7) in the statement of account are modified and controlled by the details set forth in the joint operating agreement. It requires each of the parties, including appellants, to advance their costs in cash funds for the drilling of new wells. Most of the appellants did this. McKendrick did not. The operating agreement was designed to set forth the obligations of the parties and to prevent any further controversies among them. There had already been a multitude of law suits. In other words, paragraph (7) cannot be isolated and read by itself. Although the meaning of that paragraph is not clear, when its general terms are read along with the operating agreement, it would appear to have been the manifest intention of the parties to require each of the non-operators, including McKendrick, to advance his proportionate costs of new wells in cash.

For all of these reasons, there is no merit in the contention that Cashion was under any contractual obligation to advance to McKendrick his costs of drilling the two wells.

Suggestion of error overruled.

*Roberds, P. J.,* and *Hall, Lee,* and *Holmes, JJ.,* concur.

ON PETITION OF APPELLANTS TO DEFER ACTION ON MOTION OF APPELLEES FOR THE ALLOWANCE OF 5% DAMAGES UNDER SECTIONS 1971 AND 1972, CODE OF 1942, RECOMPILED, PENDING THE DECISION OF THIS COURT ON THE SUGGESTION OF ERROR HEREIN FILED BY THE APPELLANTS.

HOLMES, J.

Pending the consideration of this cause on suggestion of error, the appellees have filed a motion for the allowance of five percent damages as provided in Sections 1971 and 1972, Code of 1942, Recompiled, and the appellants have filed a petition to defer action on said motion until the decision of the Court on the suggestion of error. The petition of the appellants is granted, and the Court having now overruled said suggestion of error, the appellants are followed fifteen days from the entry of the order on said petition to respond to the aforesaid motion of the appellees, and the appellees are allowed five days from the filing of said response to file any rejoinder thereto.

Petition to defer action on motion of appellees for allowance of five percent damages granted, and appellants allowed fifteen days from the entry of this order to respond to said motion, and appellees allowed five days from the filing of said response to file any rejoinder thereto, and the clerk is directed to notify counsel accordingly.

## ON MOTION OF APPELLEES FOR THE ALLOWANCE OF FIVE PERCENT DAMAGES ON AFFIRMANCE OF CAUSE ON APPEAL

HOLMES, J.

The appellants, Chas. S. McKendrick and others, filed their original bill in the Chancery Court of Jefferson County, Mississippi, against the appellees; Lyle Cashion Company and others, asserting a claim to an undivided interest in two oil wells and the production therefrom designated as Allen Wells Nos. 6 and 7 in Jefferson County, Mississippi. They prayed that their asserted interest be declared by the Court to be vested in them

and that the appellees be required to render an accounting for the proceeds of production derived from the operation of the wells.

. The appellees filed an answer and cross-bill. In their answer they denied the claim of the appellants to an interest in the wells and averred that such interests in the wells as had been formerly vested in the appellants had become vested in the appellees by the failure of the appellants to advance or legally tender their share of the estimated cost of the drilling operations as required by the terms of a joint operating agreement entered into between the parties. In their cross-bill, the appellees prayed that the interest in the wells claimed by the appellants be adjudged to be vested in the appellees and that the appellants, or the clerk of the court in their behalf, be required to execute a proper assignment of such interest to the appellees.

After a hearing, the trial court denied the prayer of the original bill and ordered that said original bill be dismissed with prejudice and granted the prayer of the cross-bill.

On appeal to this court, the decree of the court below was affirmed. Chas. S. McKendrick, et al v. Lyle Cashion Company, et al. (No. 40,766), 104 So. 2d 285 (decided July 3, 1958). A suggestion of error, filed by the appellants, was overruled on October 1, 1958. 105 So. 2d 481.

The appellees have now filed a motion in this Court to alter and enlarge the judgment of affirmance heretofore entered in this cause so as to allow to the appellees five percent damages on the value of the property involved and to remand the cause to the court below for the ascertainment of such value. As the basis for the motion, the appellees rely upon Sections 1971 and 1972, Volume 2 Recompiled, Mississippi Code of 1942. Said section 1971 provides in its pertinent parts as follows: ''In case the judgment or decree below be affirmed, or the appellant fail to prosecute his appeal to effect, the

Supreme Court shall render judgment against the appellant for damages, at the rate of five percentum and costs, as follows: If the judgment or decree be for a sum of money, the damages shall be upon such sum. If the judgment or decree be *for the possession of real or personal property,* the damages shall be assessed on the value of the property. . . .'' (Emphasis ours)

Said Section 1972 provides for the remand of the case to the court below for the ascertainment of the value of the property if such value does not appear in the record.

■■ The appellees contend that the decree affirmed was one ''for the possession of real or personal property.'' We do not think so. The question of the possession of the interest in controversy was not an issue in the case. Under the point operating agreement entered into between the parties, the appellee, Lyle Cashion Company, was in complete possession and control of the wells involved and the operation thereof, and such right of possession and control was not challenged by this suit, nor was it brought into question. The possession and control under the joint operating agreement existed at the time of the institution of this suit and at all times pertinent, and it was not sought by the suit to disturb the same, nor could the outcome of the suit have disturbed such possession under the joint operating agreement.

It is clear from the prayer of the original bill that the suit was not one for the possession of real or personal property. The appellants prayed for a decree declaring their interest in the wells and requiring Cashion to render an accounting for the proceeds derived from the production of the wells. In short, the appellants claimed an interest in the wells and sought to have the court declare that interest and render an accounting for the proceeds of production. The court declined to enforce or establish the interest asserted by the appellants and dismissed their original bill. The question of possession was not involved. The case of Bancroft v. Martin, 144 Miss. 384, 111 So. 434, was a suit for the specific per-

formance of a claimed contract for the sale of land. The trial court dismissed the suit and this action was affirmed on appeal to the Supreme Court. The appellee in that case sought to have the Supreme Court allow five percent damages on the value of the land involved. In denying the claim for the five percent damages, the Court said: ''The decree of the court below did not enforce or establish any lien or charge or claim upon or any interest in the property involved in the suit; it simply declined to enforce or establish a claim thereto asserted by the appellant.''

In the case at bar, the appellant simply asserted a claim to an interest in the wells. The court declined to enforce or establish such claim. Such a case, in our opinion, is not one for the possession of real or personal property, or one for the allowance of the five per cent damages within the contemplation of Section 1971, Volume 2 Recompiled, Mississippi Code of 1942. ██ █ This is particularly true in view of the fact that it is well settled under the decisions of this Court that the aforesaid statute is highly penal and must be strictly construed against the claim of the successful party. Canal Bank and Trust Company v. Brewer, 147 Miss. 920, 114 So. 127; Firestone T. & R. Co. v. Fried, 202 Miss. 372, 32 So. 2d 454; M. T. Reed Construction Co. v. Martin, 215 Miss. 478, 63 So. 2d 528.

The appellees argue, however, that in previous litigation between the same parties the present positions of the parties were reversed and that since in that prior litigation a motion of the successful party for the allowance of five percent damages was sustained, the similar motion in the case at bar should likewise be sustained. The case to which the appellees refer is the case of Lyle Cashion Company v. Chas. S. McKendrick, being cause No. 40,124 on the docket of this Court, reported in 87 So. 2d 289, and wherein the Court, in stating the nature of the case, said: ''This is an appeal from a decree of the

Chancery Court of Jefferson County, Mississippi, confirming in appellee McKendrick title to a working interest in certain oil, gas and mineral leases and cancelling as clouds upon the title of appellee the claims of the appellant, Lyle Cashion Company.''

The appeal in said case resulted in an affirmance of the decree of the court below and a motion of appellee for an allowance of five percent damages was sustained. We have held in the case of Seay v. Wofford, 106 So. 927, that the statute allowing five percent damages on the affirmance of a decree for the possession of property is not applicable to a suit to cancel deeds as clouds on title, and for an accounting for rents, though the effect of the decree may involve the possession of real estate, the Court, in overruling a motion for the allowance of such damages, saying: ''The original bill in this cause prayed only for the cancellation of certain deeds as clouds on complainant's title to certain land, and for an accounting for the rents due by the defendant to the complainant. The decree entered in the court below was in exact accordance with the prayer of the bill, and while the ultimate effect of the decree may involve the possession of real estate, still the damages provided by this section are not recoverable upon the affirmance of a decree merely cancelling a deed as a cloud upon complainant's land.''

■■ ■ Nevertheless, we express no opinion as to the merits or demerits of the motion granted in the case referred to by appellee for reasons which will appear obvious from a disclosure of the records and files of this Court as they appear in the Clerk's Office. No answer is shown to have been filed to the motion. In the list of decisions handed down by this Court on October 1, 1956, the motion is listed as ''sustained and in accordance with the judgment to be agreed upon by the parties.'' No written agreement as to the form of the judgment to be entered appears on the docket or on file in the Clerk's

Office, but following the handing down of the decision on the motion, judgment was entered sustaining the motion and allowing the five percent damages on the value of the property involved, and no objection appears in the records and files of this Court to the judgment as entered. We must, therefore, assume that the judgment entered was one "in accordance with the judgment to be agreed upon by the parties." Therefore, the judgment entered in the case referred to by appellees allowing the five percent damages constitutes no precedent or authority on the motion now before the Court in the case at bar.

It is our considered opinion that the case is not a suit for the possession of real or personal property and is not one for the allowance of five percent damages within the contemplation of Code Section 1971, supra, and the motion for such damages is therefore overruled.

Motion overruled.

All Justices concur.