CHEVRON OIL COMPANY, Plaintiff-Appellee,

v.

Noel D. CLARK et al., Defendants,

W. C. Richardson, P. J. Gay, D. E. Vasser and Miss-La-Tex Oil and Gas Corporation, Defendants-Appellants.

No. 27625.

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1970.

Brunini, Everett, Grantham & Quin, George P. Hewes, III, William Timothy Jones, Jackson, Miss., for Richardson, Gay and Vasser, appellants.

Reeves, Brumfield & Reeves, Robert W. Brumfield, McComb, Miss., for Miss-La-Tex Oil and Gas Corp., appellant.

Martha Gerald, Jackson, Miss., for Chevron Oil Co.

Breed O. Mounger, Tylertown, Miss., L. O. Smith, Jr., Jackson, Miss., for plaintiff-appellee. Mounger & Mounger, Tylertown, Miss., Bacon & Smith, Jackson, Miss., of counsel.

Before AINSWORTH, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This is an interpleader action, filed by Chevron Oil Company (Chevron), to determine the ownership of 42% of the working interest[1] in a producing oil well located in the SE ¼ of the SE ¼ of Section 36, Township 5 North, Range 1 East, Franklin County, Mississippi. The district court, sitting without a jury, ruled in favor of appellees Clark, et al. We conclude that the district court was partially in error, and we therefore affirm in part, reverse in part, and remand.

Chevron owned an oil and gas lease, granted by the United States, on the land in question (as well as other lands not presently involved). In 1959, Chevron entered into a contribution agreement with Mr. Gay Herring under which Herring would ultimately be assigned the land in return for the performance of certain conditions not relevant here.

Herring in turn entered into an agreement with one T. F. Vanderlaan to "farmout"[2] a one-half interest in the Chevron lease covering the SE 1/4 of the SE 1/4 of Section 36. Herring retained the other one-half interest, and reserved an overriding royalty in the interest farmed out to Vanderlaan.

Vanderlaan was the president and majority stockholder of a Mississippi corporation known as the "Mississippi-Louisiana-Texas Oil and Gas Corporation" (MLT). MLT was incorporated with its principal purpose to search for, discover, and produce oil, gas and other minerals. As we will later develop an issue in the case is to what extent Vanderlaan was acting for himself and to what extent he was acting for MLT in his dealings with Herring and others concerning the Chevron lease.

Further dealings ensued between Vanderlaan and others, including Clark, concerning the division of the working in-

---

1. The appellants explain in their brief: The working interest is the interest of the lessee under an oil and gas lease. The typical lease, as here, provides for a ⅛ royalty to be paid to the lessor. The balance of the production represents the working interest of the lessee, and it bears the entire expense of production. Frequently, as here, it is further burdened by the reservation of overriding royalties payable out of the working interest. The term "operating rights", sometimes used in the instruments here involved is synonymous with working interest.

2. In a "farmout agreement", the owner of a lease who is not desirous of drilling at the time agrees to assign the lease, or some portion thereof, to another party who is desirous of drilling.

terest in the SE 1/4 of the SE 1/4 of Section 36. A dispute concerning the one-half interest was settled in an agreement dated February 26, 1960. It recited that the one-half working interest was owned as follows:

| Noel D. Clark | 8% | |
|---|---|---|
| Connie M. Burleson | 6.25% | |
| Pat M. Fenton | 6.25% | |
| Miss-La-Tex Oil and Gas Corporation and | | 42% |
| T. F. Vanderlaan | 29.5% | |

The 8% Clark interest is not in dispute here. It is the 42% which on February 26, 1960, belonged to persons other than Clark which is the subject of the present suit.

The February 26, 1960 agreement contained the following provision (paragraph VII) which is relevant:

1. Any party to the agreement, or his assignee, desiring a well to be drilled on the common property gives notice of his intent to do so to every other interest owner, specifying the location, proposed depth and approximate cost.

2. Following receipt of the notice of intent to drill, the notified party has 15 days to inform the notifying party whether or not the former desires to participate.

3. If the notified party desires to participate, he shall so inform the initiating party within the 15-day period. Also, within said 15-day period, he shall advance his share of the estimated drilling costs, or secure the operator therefor in a manner satisfactory to the latter.

4. If a notified party fails to respond to the notice within the 15-day period he shall be deemed to have elected not to participate, the same as if he had given notice to that effect. The same shall be true if the notified party fails to advance or secure his share of the estimated drilling costs within the 15-day period. When the well is commenced the non-participating parties shall assign their interests to the participating parties, in the proportion of the respective interests of the latter.

5. The parties desiring to drill the well shall commence operations therefor within thirty days of the expiration of the initial 15-day period, otherwise the participating parties shall forfeit the right to receive an assignment of the interest of the non-participating parties.

In 1961, Clark caused two wells to be drilled pursuant to this provision. MLT did not participate in these wells. The corporation apparently suffered from a lack of operating capital. An effort was made to sell the corporation's interest in the February 26, 1960 agreement. By the middle of 1961 the corporation was inactive. Vanderlaan, the corporation president, had returned to Texas, and the corporation was left in the hands of Mr. Kelsey McKay in McComb, Mississippi. On March 5, 1963, the State Tax Commission issued a notice that the corporation had been suspended for nonpayment of franchise taxes.

In 1965, a producing well was drilled by appellant Richardson on lands adjacent to the property in question. This discovery prompted renewed interest in the SE 1/4 of the SE 1/4, of Section 36, and Richardson began to inquire about the possibility of acquiring this property. Advised by Clark and McKay of the inactive status of the corporation and of problems in the title to the land, Richardson and appellant Gay continued to be interested in the property. On October 19, 1965, Richardson acquired the interest of Fenton and Burleson in the SE 1/4 of the SE 1/4 of Section 36, paying $600 for each interest.

On October 28, 1965, pursuant to paragraph VII of the February 26 agreement, Clark gave notice by mail of his intent to drill a well on the quarter-quarter section in Section 36. The letter demanded completion costs as well as drilling costs from the other parties to the agreement. The estimated drilling

costs for the disputed 42% was approximately $10,000, while the completion and drilling costs for the same interest was approximately $24,000.

On November 1, 1965, Clark went to Texas to visis Vanderlaan. Clark requested that Vanderlaan sign a form attached to the October 28 letter stating that the corporation did not intend to participate in the well. Clark also requested Vanderlaan to sign an identical form that Vanderlaan personally did not care to participate in the well. Vanderlaan signed both forms, as well as a letter prepared by Clark and addressed to Chevron, relinquishing any personal interest in the SE 1/4 of the SE 1/4 of Section 36. Vanderlaan received $2,000 from clark for executing the latter document.

Apparently Clark talked to Richardson's attorneys by telephone on November 1, 1965, and to Richardson himself at the Jackson, Mississippi, airport on November 2, 1965. The testimony was conflicting concerning whether Clark actually informed Richardson of the execution of the instruments by Vanderlaan on either of these occasions.

On November 4, 1965, McKay, Richardson and Richardson's attorney flew to Texas to meet with Vanderlaan. At that time Vanderlaan signed a stock transfer as well as an instrument transferring to the corporation his interest in the February 26, 1960 agreement. A longhand amendment was made to the transfer agreement stating that the transfer of interest in the February 26, 1960 agreement was "in recognition of his (Vanderlaan's) prior verbal grant to said corporation". Vanderlaan was paid $1.00 consideration for these transfers. When he returned from Texas, McKay paid the past due state franchise taxes and the corporation was reinstated on November 5, 1965. On that same day a board of directors meeting of MLT was held, and McKay was elected president. McKay was further authorized by the Board to sell the corporation's interest in the SE 1/4 of the SE 1/4 of Section 36. On November 9, 1965, McKay met with Richardson in Jackson, Mississippi, and worked out an agreement for the assignment to Richardson.

On November 10, 1965, Richardson and his attorney went to see Clark at his Memphis law office. The details of that visit are contradicted. It is clear, however, that Richardson's attorney shortly thereafter (November 11–12) wrote to Clark expressing Richardson's desire to participate in the well.[3] The letter contained an irrevocable letter of credit acquired by Richardson in favor of Clark in the amount of $25,000. The money was to be available to Clark when the bank was presented with invoices approved by Richardson and Clark. It was noted that the guaranty was submitted under protest since Clark was requiring completion costs as well as drilling costs. A telegram was also sent to Clark expressing Richardson's interest in participating in the well.

Clark's reply came on November 24, 1965, after the expiration of the 15-day period for expressing interest in participating in a well, and informed Richardson that Clark demanded an assignment of any interest which might have been owned by Richardson and his associates, "if any was ever owned by you in the first instance". Clark stated that the forfeiture of rights had occurred because Richardson and his associates had failed to advance cash or to secure Clark in a manner satisfactory to him. The letter stated that nothing therein was intended to recognize any interest purported to be owned by Richardson. Clark retained the letter of credit, but it was never drawn upon.

The district court held that the 29.5% interest stated in the February 26

---

3. About this time Richardson transferred a portion of his purported interest in the property to appellants Gay and Vasser.

The notice given was therefore given on behalf of Gay and Vasser as well as Richardson.

agreement was owned jointly by Vanderlaan and MLT, as tenants in common, and that the forfeiture signed by Vanderlaan dated October 28, 1965, served to vest in Clark Vanderlaan's 14.75% half-interest. Furthermore, the district court held that the failure of the corporation to be reinstated within one year after its suspension rendered it dissolved as a matter of law under Mississippi law. Thus its assets vested in the shareholders, and since Vanderlaan was the majority shareholder (owning approximately two-thirds of the shares) the October 28, 1965 forfeiture to Clark served also to transfer a similar portion of the corporation's 14.75% interest. The Richardson group was also held to have forfeited to Clark the 12.5% interest acquired from Fenton and Burleson for failure to advance costs or security satisfactory to Clark. Clark ultimately was awarded 37.118% of the disputed 42%, with the remaining 4.882% being vested in the other MLT shareholders. Richardson and his associates got nothing.

The district court also denied a motion by the appellants for a new trial, or alternatively to amend the decree.

This lengthy recount of the involved and complicated factual situation brings us to consideration of the applicable law. These questions are presented for our examination:

1. Was the tender of the $25,000 letter of credit by Richardson to Clark a failure to secure costs in a manner satisfactory to Clark, and did Richardson and associates thereby forfeit any rights to participate in the well?

2. Was the November 1, 1965, transfer by Vanderlaan effective to forfeit the rights of MLT and Vanderlaan to participate in the well, and to transfer those rights to Clark?

3. Was the 29.5% working interest held by MLT and Vanderlaan in joint tenancy? If not, are Vanderlaan and MLT estopped to deny the presence of a joint tenancy because of a recitation in the February 26, 1960 agreement that they were joint tenants?

In considering these question, we do so bearing in mind that we are *Erie*-bound to the law of the State of Mississippi.

■ Although the tender of the letter of credit was one of the last events in this series, it merits discussion first because an improper or inadequate tender to Clark would serve to forfeit the rights of the appellants to participate in the well even if they had otherwise properly acquired those rights. The district court held that Richardson, et al., had made an inadequate tender, i. e., not cash or other security satisfactory to Clark. The district court viewed the clause requiring security satisfactory to the operator to be an absolute requirement and not one requiring the operator to accept reasonable security in the event the requesting participants did not advance cash, citing McKendrick v. Lyle Cushion Company, 235 Miss. 325, 104 So.2d 295, suggestion of error overruled, 234 Miss. 325, 105 So.2d 480 (1958). We would agree if Clark had requested only drilling costs as provided in the February 26, 1960 agreement. However, in this instance Clark, as the operator, demanded not only drilling costs but approximately $14,000 worth of additional completion costs, clearly overstepping the bounds of the agreement. Under these circumstances we think it inequitable that the operator should successfully contend that appellants, who attempted to protect themselves from such overreaching by submission of a letter of credit, rather than cash, conditioned on the joint approval of invoices for drilling and completion costs, failed to secure him adequately. There is little if any serious suggestion in the record that Richardson and associates would have balked at approving invoices under the letter of credit for drilling costs to which the operator was entitled. The

letter was, however, submitted under protest because of the demand for completion costs, and it seems reasonable to believe that the joint approval procedure was used by Richardson to frustrate any premature demand for payment of completion costs.

Furthermore, Clark categorically rejected any recognition of the Richardson group's interest from the outset. His letters make it abundantly clear that they were not to be interpreted as recognition of any interests purported to be owned by the Richardson group. In Frostad v. Kitchens, 5 Cir. 1967, 377 F. 2d 475, this Court noted that under Mississippi law no tender is necessary where it would constitute a useless act. Clark further injured his equitable position by waiting until after expiration of the 15-day period for participation in the well before replying that the tender was unacceptable. We note also that although Clark rejected the letter of credit as inadequate and refused to recognize the Richardson group's interests, he nevertheless retained the letter of credit in his possession. 52 Am.Jur., Tender, Sec. 10, page 223, 1969 Cum.Supp. at page 19 teaches:

"Where one does not object to the amount or character of a tender at the time it is made, he cannot be permitted to do so after it is too late to make a better one".

State ex rel. Attorney General v. Mize, 204 Miss. 886, 36 So.2d 143 (1918), also provides:

"Where a party tenders a payment to another the latter must accept or reject the tender as made. If he accepts it he is bound by all the terms of the tender and he can avoid it only by return of the tender * * *"

Thus, if Clark is not estopped in equity to deny the adequacy of the tender as a result of his demand for more than drilling costs, we certainly think that his refusal to recognize the Richardson group's interest, his belated rejection of the tender, and his retention of the letter of credit under Mississippi law either render the tender a futile and unnecessary act or constitute an acceptance of the tender. Under any of these several theories the rights of the Richardson group were not forfeited, as found by the trial court.

 Moving on to the question of whether the transfer by Vanderlaan to Clark was effective to forfeit the rights of MLT and Vanderlaan, we first must deal with the district court's holding that the corporation was dissolved as a matter of law because it was not reinstated within one year of its suspension. We conclude that the district court misapprehended and misapplied the prevailing law as to this point.

Section 9327 of the Mississippi Code provides:

"If, however, the suspension has not been set aside within a period of twelve months from the date of the original imposition thereof, all rights to have such suspension set aside shall cease; and after the expiration of said twelve-month period, said organization, insofar as being a going concern, with rights to exercise powers originally granted are concerned, shall be considered as non-existent; and the disposition of assets, and winding up of the affairs of the organization may be accomplished in such manner as may be provided by law".

Although the district judge conceded that no Mississippi cases interpreted this provision, he reasoned that the statute mandatorily called for dissolution as a matter of law if the corporation was not reinstated within one year of the suspension. Our view is that the statute is permissive, and requires additional affirmative action to accomplish dissolution of a corporation. While the Mississippi statute provides that any rights to have the corporation reinstated shall cease after one year and the corporation shall be considered non-existent, there

was considerable testimony that in fact it had been a 30-year routine practice of the state to allow long-suspended corporations to be reinstated upon the payment of taxes and penalties. It was considered by the state to be more expeditious to allow an already organized, but suspended, corporation simply to be reinstated rather than to force a dissolution, and require all of the formalities of forming a new corporation. In other words the long-standing interpretation given the statute in practice has been that while suspended corporations had no right to be reinstated after one year's suspension, the state nevertheless in its grace may reinstate them upon a proper application and payment of back taxes and penalties. We interpret the statute not to be self-executing, and as requiring further action to effect the dissolution of a corporation. This is the way the statute has actually been utilized for some 30-odd years in practice. In our opinion it makes good sense in law, too.

Given our interpretation of Section 9327 of the Mississippi Code, the corporation on November 1, 1965 (the date of the Vanderlaan Transfer to Clark) was in existence, but suspended by the State of Mississippi. In the contemplation of the law the corporation could transact no business while in its suspended state. Section 9327, Mississippi Code, supra. Thus Vanderlaan, even as the then-president of the corporation had no authority to transfer any interest belonging to the corporation. Until the corporation was reinstated on November 5, 1965, any attempts to conduct business of this nature were illegal under Mississippi law. It is conceivable that in dealings with third parties without knowledge of the corporate status the corporation might be estopped to deny the validity of the transfer, or alternatively, such dealings might be held voidable. Neither theory appears to be applicable to Clark, for nowhere is it denied that Clark was actually aware of the suspension of the corporation and the limits which this placed upon the ability of the corporation and its officers to transact business.

Moreover, it is questionable whether Vanderlaan had the authority to divest the corporation of this working interest. Under Mississippi law it is established that a working interest in an oil well is realty. Merrill Engineering Company v. Capitol National Bank of Jackson, 192 Miss. 378, 5 So.2d 666 (1942). The general rule is that the president of a corporation does not have the authority to divest the corporation of real property without assent from the Board of Directors. This rule is not obviated by the fact that Vanderlaan was the majority shareholder. See Pigott v. Texaco, 5 Cir.1966, 358 F.2d 723, holding that under Mississippi law a corporation is an entity separate and distinct from its shareholders.

It thus seems apparent that the transfer by Vanderlaan to Clark was ineffective to the extent that it purported to transfer the interest of the corporation. We believe, however, that the subsequent transfer of stock and interest by Vanderlaan to the corporation, and the assignment by the reinstated corporation to Richardson were valid.

■ The one remaining question is whether the February 26, 1960 agreement creates a joint tenancy in MLT and Vanderlaan as to the 29.5% working interest, or whether the circumstances are such that either party should be estopped to deny such a relationship. The February 26, 1960 agreement recites that MLT and Vanderlaan are co-owners of the 29.5%. Appellants concede that the February 26 agreement creates a presumption that the property was owned in joint tenancy, but contend that the presumption was overcome by the great weight of contrary evidence. We disagree. The district court found that Clark had acquired the interest of Vanderlaan in good faith and without knowledge that Vanderlaan disavowed any personal interest in the disputed

property, that MLT and Vanderlaan in fact jointly owned the property in question, that as a bona fide purchaser Clark was entitled to rely on the record as it appeared, and that the Richardson group as successors to MLT were estopped to deny that the record accurately reflected the interests of the parties.

We are limited in our review of the findings of fact under Rule 52(a), F.R. Civ.P., to a consideration of whether the findings are clearly erroneous. See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed.2d 20 (1954). After a review of the record we are not clearly of the opinion that a mistake has been made. *McAllister,* supra. There was evidence at the trial that in 1960 Clark had written a letter which indicated that he knew Vanderlaan was operating solely on behalf of the corporation and not for his personal gain. However, Clark also wrote a letter to Gay in June, 1965, after the February 26 agreement, indicating that 29.5% was held by MLT and its successors. Vanderlaan's deposition in the record relates that Vanderlaan told Clark that he had no personal interest in the disputed property. Clark testified that Vanderlaan made no such statement. Clark paid Vanderlaan $2,000 for the execution of a quitclaim of any personal interest. The resolution of this conflicting evidence was a matter for the district court, and we find no error in the holding that MLT and Vanderlaan were joint tenants.

Since Vanderlaan and MLT were joint tenants, Vanderlaan's conveyance to Clark of his interest was effective to transfer 14.75% of the disputed property to Clark.

In sum, we hold that the Richardson group is entitled to a 27.25% working interest in the property, while Clark is entitled to 14.75% of the working interest, and we therefore

Affirm in part, reverse in part, and remand for disposition below in a manner not inconsistent with this opinion.