518 So.2d 625 (1987)
BRYANT CONSTRUCTION COMPANY, INC., Duncan Bryant and Jean Bryant
v.
COOK CONSTRUCTION COMPANY, INC.
No. 57284.
Supreme Court of Mississippi.
December 2, 1987.
Rehearing Denied February 3, 1988.
*626 David M. Sessums, Varner, Parker & Sessums, Vicksburg, for appellants.
David W. Mockbee, Stephen H. Leech, Jr., Phelps, Dunbar, Marks, Claverie & Sims, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
Bryant Construction Company, Inc., a corporation, (Bryant) filed suit against Cook Construction Company, Inc. (Cook) in the Circuit Court for the First Judicial District of Hinds County, alleging breach of contract. Cook moved to dismiss the complaint, asserting that Bryant had been suspended under § 27-13-27, Miss. Code Ann. (1972) for failure to file tax returns and that Bryant therefore had neither the power to contract nor the right to file suit. The trial court granted the motion to dismiss. Then Duncan and Jean Bryant, the only shareholders of Bryant, filed an application to intervene pursuant to Rule 24, Mississippi Rules of Civil Procedure. After the trial court entered an order allowing intervention and substitution of parties, Duncan Bryant, Jean Bryant and Bryant Construction, on January 13, 1986, filed an amended complaint, again alleging a breach of contract by Cook. Cook moved to dismiss the complaint, asserting that the shareholders' claim was derivative of the corporation's claim, and that because the corporation could file no claim, the shareholders, therefore, had no claim. The trial court granted Cook's motion and entered a judgment dismissing the amended complaint. At the time of this judgment, there was pending before the trial court a motion by Bryant for summary judgment on the merits of the case.
From the trial court's judgment dismissing their complaint, Bryant et al. appeal, assigning three (3) errors:
I. THE TRIAL COURT ERRED IN DISMISSING BRYANT CONSTRUCTION'S ORIGINAL COMPLAINT.
II. THE TRIAL COURT ERRED IN ENTERING ITS FINAL JUDGMENT DISMISSING THE AMENDED COMPLAINT.
III. THE TRIAL COURT ERRED IN DENYING, BY IMPLICATION, THE MOTION FOR SUMMARY JUDGMENT MADE BY BRYANT CONSTRUCTION ET AL.

FACTS
On March 21, 1983, the Mississippi State Highway Department entered into a contract with Cook. Under the terms of that contract Cook was to perform certain work on highway construction projects in Hinds and Madison Counties in Mississippi. Also on March 21, 1983, Cook and Bryant entered into a subcontract which provided that Bryant was to perform certain portions of the work on the projects.
*627 On January 27, 1984, the Chairman of the Mississippi State Tax Commission suspended Bryant for failure to file annual reports and pay franchise taxes. In suspending Bryant, the Commissioner acted pursuant to Miss. Code Ann. § 27-13-27 (1972), a statute discussed in more detail infra. Although Bryant's suspension was eventually set aside (on December 6, 1985), two (2) important events occurred during the period of that suspension.
The first of these important events occurred on October 19, 1984, when Bryant  although it had been suspended from "perform[ing] any right acquired by the [corporate form of organization,]" § 27-13-27(1)  entered into a contract with Cook. This contract related to the highway construction project that was the subject of the January 27, 1984 subcontract between Cook and Bryant. The work contracted for in October, however, was not covered in the original subcontract. This October contract is the agreement on which Bryant sued. Pursuant to the October contract, Bryant was to install castings and grates needed for the highway construction project. This agreement was evidenced, not by a lengthy contract, but instead by the following memorandum on Cook Construction letterhead:
 10/19/84
 Quote by Don Glenn
 for labor on Job 865
 I-55 North
 Castings  $0.63/lb.
 Grates  $1.18/lb.
This memorandum was signed by G.R. Gatlin of Cook Construction. Bryant did in fact install castings and gratings on the highway construction project, although the pleadings and discovery materials reflect a dispute as to the quantities; but the real dispute was with regard to the prices quoted in the memorandum. Cook refused to pay the prices quoted in the memorandum, claiming that they were quoted in error, that they actually reflected materials costs rather than labor costs, and that they were so high in comparison to prevailing labor costs that Bryant knew or should have known that the quote was incorrect.
The dispute over the quoted price resulted in Bryant's filing suit. In preparing to defend the suit, Cook learned of Bryant's suspension for failure to pay franchise taxes, and, as noted ante in the statement of the case, the focus of the dispute quickly shifted from the issue of the price quote to the issue of whether Bryant had either the power to contract or the power to sue, since the corporation was suspended pursuant to § 27-13-27 both at the time it entered into the contract and at the time Bryant originally filed suit. The suspension had been set aside by the time the amended complaint was filed. The following is a list of key events in this case, along with the dates on which those events occurred:

March 21, 1983 Cook entered into its contract with
 the Mississippi State Highway Department.
March 21, 1983 Cook and Bryant entered into the
 formal subcontract.
January 27, 1984 Bryant was suspended by the Mississippi
 State Tax Commission for failure
 to pay franchise tax.
October 19, 1984 Bryant and Cook entered into the
 contract at issue.
June 18, 1985 Bryant filed its original complaint
 against Cook.
December 6, 1985 Bryant's suspension was set aside.
January 3, 1986 Bryant's original complaint was dismissed.
January 13, 1986 Bryant filed its amended complaint.
April 1, 1986 Bryant's amended complaint was dismissed.

As described ante, the trial court, on Cook's motion, dismissed the original complaint, holding that Bryant, by virtue of the suspension, could neither contract nor bring suit. After the complaint was amended to include Bryant's two (2) shareholders as plaintiffs, the trial court, again on Cook's motion, dismissed the amended complaint and entered a final judgment to that effect. From that judgment Bryant Construction et al. appeal, raising three (3) issues:

I. DID THE TRIAL COURT ERR IN DISMISSING THE ORIGINAL COMPLAINT, IN WHICH ONLY THE CORPORATION WAS NAMED AS PLAINTIFF?

II. DID THE TRIAL COURT ERR IN DISMISSING THE AMENDED COMPLAINT, WHICH NAMED THE CORPORATION *628 AND ITS ONLY TWO SHAREHOLDERS AS PLAINTIFFS?
Because the reasons for the two (2) dismissals were intertwined, we address these two (2) assignments together.
There were two (2) possible grounds for dismissing either complaint: 1) a suspended corporation like Bryant lacks the power and capacity to contract, and its complaint should therefore be dismissed; and 2) a suspended corporation like Bryant lacks the power and capacity to sue, and therefore its suit should be dismissed. It is essential to disposition of this appeal to recognize that there are two (2) incapacities at issue: Bryant's lack of power to contract, and Bryant's lack of power to sue.
With that distinction in mind, we proceed to a discussion of the statute under which Bryant was suspended:
§ 27-13-27. Suspension of organization  setting aside of suspension.
(1) If any corporation or organization taxable under this chapter shall fail or refuse to pay the tax demanded and determined by the commissioner, then the commissioner, in addition to the other authority conferred upon him in this chapter, may suspend the right of such organization to perform any right acquired by the form of the organization. . ..
...
(3) If any organization thus suspended shall appear, either by its principal officer or officers, or its attorney, within twelve months from the date of such suspension, and make satisfactory explanation of the cause of the default; and pay all taxes due, together with all interest, penalties and increases finally determined by the commissioner to be due, then it shall be the duty of the commissioner to note upon the records of his office that such suspension has been set aside, and immediately notify the secretary of state, in writing of the setting aside of such suspension; and the secretary of state shall make the proper notation on the records of his office pertaining to such organization, that such suspension has been set aside.

(4) Upon the setting aside of such suspension, said organization shall be restored to all rights of which it was deprived by such suspension, and authorized to resume all activities as though said suspension had not been imposed.

(5) If, however, the suspension has not been set aside within a period of twelve months from the date of the original imposition thereof, all rights to have such suspension set aside shall cease; and after the expiration of said twelve-month period, said organization, insofar as being a going concern, with rights to exercise powers originally granted are concerned, shall be considered as nonexistent; and the disposition of assets, and winding up of the affairs of the organization may be accomplished in such manner as may be provided by law.
Miss. Code Ann. § 27-13-27 (1972) (emphasis added).
We have never interpreted § 27-13-27, although we have, in Carolina Transformer Company, Inc. v. Anderson, 341 So.2d 1327 (Miss. 1977), interpreted an almost identical statute. Miss. Code Ann. § 79-3-189,[1] which was construed in Carolina Transformer, provides for the suspension of any corporation which fails to file an annual report with the secretary of state, and for the reinstatement of such a corporation if the report is filed and the applicable fees paid within twelve months of the suspension. In Carolina Transformer, we held that the corporation, by virtue of its suspension, "became functionally unable to operate though it did not cease to exist." 341 So.2d at 1329.
The United States Court of Appeals for the Fifth Circuit has made two (2) "Erie-guesses"[2] *629 at the meaning of § 27-13-27. In 1970 the Fifth Circuit decided Chevron Oil Company v. Clark, 432 F.2d 280 (5th Cir.1970). In that factually complex case, the federal district court had held that the statute's subsection providing for the dissolution of a suspended corporation that did not act to have the suspension set aside within the twelve-month grace period, was self-executing, and that a corporation which remained suspended for longer than twelve months was dissolved by operation of law. 432 F.2d at 284. The Fifth Circuit reversed the district court's ruling on this point and held that the statute was permissive, requiring additional affirmative action by the state to dissolve a suspended corporation. 432 F.2d at 285.
Again in 1986, the Fifth Circuit had an opportunity to "Erie-guess" at the construction of § 27-13-27, in PLM v. E. Randle Co., 797 F.2d 204, 206 (5th Cir.1986). PLM is strikingly similar to the instant case, although there is one tremendously important distinction: PLM involved only the power to bring suit, while the instant case involves both the power to bring suit and the power to contract.
The facts of PLM are as follow: Ballard, having been suspended for failure to pay franchise taxes, nevertheless contracted with Randle (Ballard's president entered the contract before learning of the suspension) and then attempted to sue on the contract. Although Ballard was reinstated within the twelve-month statutory grace period and before final judgment in the case, the contract and the filing of the suit both occurred during the period of suspension. Faced with these facts, the Fifth Circuit concluded that § 27-13-27(4) contemplates a restoration that is complete and unconditional, but not retroactive.
When § 27-13-27, Carolina Transformer, Chevron Oil, and PLM are analyzed, certain principles begin to cohere, which may be summarized as follows. When a corporation fails to pay its franchise tax, as Bryant failed to do, then the chairman of the state tax commission may suspend the corporation's right to perform any right acquired by virtue of its status as a corporation. § 27-13-27. Unless and until the suspended corporation is dissolved by an affirmative act of the state (a measure never taken against Bryant), then the corporation, by virtue of its suspension, is "functionally unable to operate though it [does] not cease to exist." Carolina Transformer, 341 So.2d at 1327; Chevron Oil, 432 F.2d at 286. The actual effect of the suspension, then, is that the corporation, although it exists, is deprived of its state-granted power and capacity to function.
One further step is necessary in this analysis, a step which neither of the parties has suggested in the trial court or on appeal. What really occurs in a § 27-13-27 suspension is that the state takes away the corporation's power to act. A suspended corporation, though it still exists, has been deprived of all power by the state. Therefore, any action taken by a suspended corporation during the time of the suspension is beyond the powers of the corporation, i.e., ultra vires. Traditionally, the phrase "ultra vires" has been used to refer to acts which the corporation's charter does not authorize. Schrewe v. Scott Manufacturing Corp., 258 So.2d 668 (La. Ct. App. 1972); Gralapp v. Mississippi Power Co., 280 Ala. 368, 194 So.2d 527 (1967). The phrase, however, literally means "beyond the powers," and Black's Law Dictionary defines it as follows:
Acts beyond the scope of the powers of a corporation, as defined by its charter or laws of state of incorporation. State ex rel. v. Holston Trust Co., 168 Tenn. 546, 79 S.W.2d 1012, 1016 [1935]. The term *630 has a broad application and includes not only acts prohibited by the charter, but acts which are in excess of powers granted and not prohibited, and generally applied either when a corporation has no power whatever to do an act, or when the corporation has the power but exercises it irregularly. People ex rel. Barrett v. Bank of Peoria, 295 Ill. App. 543, 15 N.E.2d 333, 335 [1938]. Act is ultra vires when corporation is without authority to perform it under any circumstances or for any purpose. By doctrine of ultra vires a contract made by a corporation beyond the scope of its corporate powers is unlawful. Community Federal Sav. & Loan Ass'n of Independence, Mo. v. Fields, C.C.A.Mo., 128 F.2d 705, 708 [1942]. Ultra vires act of municipality is one which is beyond powers conferred upon it by law. Charles v. Town of Jeanerette, Inc., La. App., 234 So.2d 794, 798 [1970].
Moreover, § 79-3-11 of the Mississippi Code, discussed more fully infra, refers to an act "that the corporation was without capacity or power to do... ." Thus when Cook, in its motion to dismiss Bryant's original contract claim, argued that Bryant was barred "from enforcing contracts allegedly made during its suspension," Cook was actually arguing that the contract was beyond Bryant's powers, i.e., that it was an ultra vires act. See A.R.D.C., Inc. v. State Farm Fire & Casualty Co., et al., 619 S.W.2d 843, 847 (1981) (Clark, J., concurring, referring to acts taken by suspended corporation as ultra vires).
Such a defense runs head-on into a brick wall in the form of Miss. Code Ann. § 79-3-11,[3] which provides as follows (with emphasis added):
§ 79-3-11. Defense of ultra vires.

No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but[4] such lack of capacity or power may be asserted:
(a) In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. If the unauthorized acts or transfer sought to be enjoined are being, or are to be, performed or made pursuant to any contract to which the corporation is a party, the court may, if all of the parties to the contract are parties to the proceedings and if it deems the same to be equitable, set aside and enjoin the performance of such contract, and in so doing may allow to the corporation or to the other parties to the contract, as the case may be, compensation for the loss or damage sustained by either of them which may result from the action of the court in setting aside and enjoining the performance of such contract, but anticipated profits to be derived from the performance of the contract shall not be awarded by the court as a loss or damage sustained.
(b) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through shareholders in a representative suit, against the incumbent or former officers or directors of the corporation.
(c) In a proceeding by the attorney general, as provided in this chapter, to dissolve the corporation, or in a proceeding by the attorney general to enjoin the corporation from the transaction of unauthorized business.
Moreover, we have held that "one who accepts the benefits of a corporation's ultra vires contract [may] not repudiate it when sued on the agreement." Pendleton v. Williams, 198 So.2d 235, 239 (Miss. 1967). In the instant case, Bryant performed the work it had contracted to do. Insofar as Cook claimed Bryant's suspension prevented the latter from entering into a contract, the defense is prohibited by § 79-3-11 (limiting defense of ultra vires).
*631 While this analysis applies to one of the grounds for dismissing the complaint, i.e., that Bryant did not have the power to contract, we must deal with the other possible ground for dismissal  that Bryant, because it had been suspended, did not have the power to bring suit. The power to sue in the corporate name, like the power to contract, is statutory. Miss. Code Ann. § 79-3-7 (repealed effective January 1, 1988); Miss. Code Ann. § 79-4-3.02 (Supp. 1987) (effective January 1, 1988). The corporation has the power to sue in the corporate name only insofar as the state grants that power. When the corporation is suspended, it loses all rights "acquired by the form of the organization," § 27-13-27, one of which, no doubt, is the right to sue in the corporate name. Thus, during its suspension, Bryant had no right to bring suit in the corporate name. Therefore, the trial court was probably correct in dismissing the original complaint, which was filed during the period of the suspension. By the time the amended complaint was filed, however, the suspension had been set aside, and Bryant was thus "authorized to resume all activities as though said suspension had not been imposed." § 27-13-27(4). Therefore, the claim that Bryant lacked the power to file suit was simply not applicable to the amended complaint.
Had Bryant emphasized on appeal the import of its having been reinstated before the filing of the amended complaint, Cook might have tried to meet that argument by analogizing to Mississippi's corporate door-closing statute, § 79-3-247,[5] which this Court has consistently construed to mean that a foreign corporation, by belatedly qualifying to do business in the state, does not become authorized to maintain an action on a cause which had accrued before it qualified. Honey Fluff Donut Co. v. Daniel, Inc., 374 So.2d 800 (Miss. 1979); Parker v. Lin-Co Producing Co., 197 So.2d 228 (Miss. 1967). Cook might well argue that, because Bryant was suspended when the cause of action accrued (Bryant originally filed suit on June 18, 1985; so it is obvious that the cause of action accrued, if at all, before Bryant's reinstatement on December 6, 1985), then by analogy to the "door-closing" cases, Bryant's reinstatement would not entitle Bryant to sue on a cause of action which accrued during suspension.
We conclude, however, that the analogy to the corporate door-closing statute is inapt because the statute under which Bryant was suspended contains the following provision not included in the door-closing statute:
Upon the setting aside of such suspension, said organization shall be restored to all rights of which it was deprived by such suspension, and authorized to resume all activities as though said suspension had not been imposed.
Miss. Code Ann. § 27-13-27(4) (1972). Because of this provision, decisions construing the door-closing statute are inapplicable to the case at bar.
Bryant might well argue that if § 79-3-11 (limiting use of ultra vires defense) precludes Cook from questioning Bryant's power to contract, then that statute also precludes Cook from questioning Bryant's power to file suit. Bryant's lack of power to sue, however, is more a matter of jurisdiction than a matter of the defense of ultra vires. The effect of Bryant's suspension was that the corporation was a nullity insofar as the courts' of this state recognizing it as an entity that could sue. When Cook asserted that Bryant should be dismissed because its suspension rendered it powerless to sue, Cook was not claiming that an "act of [the] corporation ... [was] invalid by reason of the fact that the corporation was without power or capacity to do the act," § 79-3-11; rather, Cook was asserting that Bryant lacked the power to be in court at all. Moreover, the matter is moot, since Bryant's amended complaint was filed after reinstatement.
The trial court erred in dismissing Bryant's amended complaint. At the time *632 that complaint was filed, Bryant had been reinstated and thus had the right to sue. Although the suit was based on a contract which was beyond Bryant's powers, that defense is not available to Cook.

III. DID THE TRIAL COURT ERR IN DENYING, BY IMPLICATION, BRYANT'S MOTION FOR SUMMARY JUDGMENT ON THE MERITS OF THE CONTRACT CLAIM?
After filing its amended complaint and conducting discovery, Bryant moved for summary judgment on the merits of its contract claim. As described ante, the trial court disposed of the claim on the basis of Bryant's suspension and thus never reached the summary judgment motion. Bryant argues on appeal 1) that the trial court, in dismissing the claim, implicitly denied the motion for summary judgment, and 2) that the denial of Bryant's motion for summary judgment was error because there was no genuine issue of material fact and Bryant was entitled to judgment as a matter of law. The trial court never considered the merits of the summary judgment motion. We "should undertake consideration of no matter which has not been ... decided by the trial court," Educational Placement Services v. Wilson, 487 So.2d 1316, 1320 (Miss. 1986).

CONCLUSION
The judgment of the trial court is reversed and the cause is remanded for Bryant to pursue its contract claim.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Effective January 1, 1988, this section is repealed. Thereafter, administrative dissolution by the secretary of state will be governed by Miss. Code Ann. § 79-4-14.20 et seq. (Supp. 1987).
[2] When a federal court sitting in a diversity action, and thus applying the law of the forum state, must rule on an issue never decided in the forum state, then the federal court's attempt to divine and enforce the rule the state court would choose is sometimes described as an "Erie-guess." Candebat et al. v. Flanagan et al., 487 So.2d 207 (Miss. 1986); Peoples Bank and Trust et al. v. Arick et al, 434 So.2d 699 (Miss. 1983); Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[3] Effective January 1, 1988, this section is repealed, and § 79-4-3.04 (Supp. 1987) applies.
[4] None of the three (3) listed exceptions is applicable in the case at bar.
[5] Effective January 1, 1988, this section is repealed and is replaced by § 79-4-15.02, which allows the trial court to stay the proceeding until the foreign corporation obtains a certificate of authority.