502 So.2d 619 (1986)
BRISCOE'S FOODLAND, INC.
v.
CAPITAL ASSOCIATES, INC.
No. 56033.
Supreme Court of Mississippi.
February 19, 1986.
Rehearing Denied March 4, 1987.
Colmon S. Mitchell, Smith & Phillips, Batesville, for appellant.
D. Ronald Musgrove, Smith & Musgrove, Batesville, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
*620 ROY NOBLE LEE, Presiding Justice, for the court:
Capital Associates, Inc. filed suit in the Circuit Court of Panola County against Briscoe's Foodland, Inc. for a total of sixteen thousand six hundred twenty-six dollars six cents ($16,625.06), which included an outstanding balance on a lease contract and attorney's fees. Briscoe's Foodland, Inc. filed a counterclaim against Capital Associates, Inc., alleging tortious conduct and breach of warranties, and sought one hundred fifty-five thousand dollars ($155,000) damages. The lower court, Honorable Andrew C. Baker, presiding, entered summary judgments in favor of Capital Associates, Inc. on the complaint and counterclaim, and Briscoe's Foodland, Inc. has appealed to this Court, assigning the following errors in the trial below:
(1) The trial court erred in granting summary judgment to Capital on Briscoe's counterclaim because: (a) there were genuine issues of material fact; (b) Capital's supporting affidavit was defective; and (c) Capital was not entitled to judgment as a matter of law.
(2) The trial court erred in granting summary judgment to Capital on its breach of contract claim for $16,626.06, because: (a) genuine issues of material fact existed; and (b) Capital was not entitled to judgment as a matter of law.
(3) The trial court erred in twice denying Briscoe's motion for leave to amend its answer.
Briscoe's and Capital entered into a lease agreement wherein Briscoe's leased video monitoring equipment from Capital to use in its grocery store. The agreement provided that Capital would purchase the equipment from Stanco Communications Products, Inc., and Stanco would arrange for delivery of the equipment to Briscoe's. The agreement further provided that the lessor, Capital, disclaimed all warranties of merchantability and fitness for a particular purpose, the disclaimer being in large boldface print; all warranties were disclaimed in large bold red type on the front page of the lease agreement, all other wording on the lease agreement was in regular black print; warranties on the equipment were provided by the seller/vendor Stanco; Capital assigned unto Briscoe, solely for the purpose of making and prosecuting any claim, all rights it might have against Stanco for breach of warranty or representations respecting the equipment. The lease agreement also provided that Briscoe's would pay unto Capital the sum of two hundred ninety-nine dollars sixty-four cents ($299.64) per month for a period of sixty (60) months.
The complaint alleged that Briscoe's defaulted in the payments provided by the instrument and a true and correct copy of the lease agreement was attached to the complaint and made a part thereof. Briscoe's filed an answer and counterclaim and admitted that it did not make payments in accord with the terms of the contract for the reason that the equipment became inoperable and Briscoe's was unable to obtain the necessary repair and maintenance on the part of Capital. Briscoe's also filed a counterclaim along with its answer claiming tortious conduct on the part of Capital, that it conspired to avoid the availability to Briscoe's of access to the implied warranty provisions of Mississippi Code Annotated § 75-2-314 and § 75-2-315 (1972) and that the lease agreement deceived and defrauded Briscoe's. Capital denied the affirmative allegations of the answer and the allegations of the counterclaim.

I.
Under Assignment of Error # 1, appellant first contends that the lower court erred in granting summary judgment to appellee on the counterclaim[1] because (1) there were genuine issues of material fact and (2) that the instrument (agreement) sued upon is not really a lease agreement, but constitutes a buy and sell agreement, *621 or a security agreement. Appellee contends that the instrument is a lease.
The instrument is entitled "Lease Agreement." The parties are referred to as "lessor" and "lessee." The lessor retained title to the equipment. The instrument contains a fixed lease term of sixty (60) months payable in installments of $299.64 each. Appellant Briscoe's, the lessee, certified that Capital, the lessor, had performed fully and satisfactorily "all covenants and conditions to be performed under the lease." Appellant disclaimed all warranties in large capital letters in the delivery and acceptance receipt.
If a contract is ambiguous and its meaning is vague and not clear, questions of fact are presented which must be resolved by the trier of facts after a trial on the merits. However, where the contract is clear and unambiguous, its meaning and effect are matters of law which may be determined by the court. The trial judge held that the agreement executed by the appellant and appellee was a lease, and that it was clear and unambiguous. We agree with the holding of the lower court and are of the opinion that it was not acting as a trier of fact, but was determining whether a genuine issue of material fact as to the nature of the agreement existed. Mississippi Code Annotated § 75-2-106 (1972), as amended, provides the following:
(1) In this chapter unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2-401) [§ 75-2-401]. A "present sale" means a sale which is accomplished by the making of the contract.
The lease agreement provides in Section 15 that, upon termination or expiration of the lease, the lessee shall forthwith deliver, freight prepaid, the equipment to the lessor (Capital). Nowhere is there a provision that title will pass or be vested in the lessee.
Mississippi Code Annotated § 75-2-102 (1972), excludes certain security and other transactions in the following language:
Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.
Some jurisdictions treat equipment leases as sales for purposes of Article 2 of the Uniform Commercial Code. See Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House, 59 Misc.2d 226, 298 N.Y.S.2d 392 (1969).
In W.E. Johnson Equipment Co. v. United Airlines, Inc., 238 So.2d 98 (Fla. 1970), the Supreme Court of Florida said:
The reasons for imposing the warranty of fitness in sales cases are often present in lease transactions. Public policy demands that in this day of expanding rental and leasing enterprises the consumer who leases be given protection equivalent to the consumer who purchases. Although a sale transfers ownership and a lease or bailment merely transfers possession and anticipates future return of the chattel to the owner, there may be as much or more reliance on the competence or expertise of the lessor than on the competence or expertise of the seller. The prospective lessee with an immediate need is more apt to spend less time "shopping around" for the most suitable chattel if he contemplates possession for a relatively short time rather than permanent ownership. Just as in the sale of goods, the lessee may have little opportunity or ability to detect a design or other characteristic inherent in the leased chattel that might render it unsuitable for a particular intended use. The lessor as well as the seller is able to sustain or distribute as a cost of doing business the *622 expense of protecting himself against damages sustained by breach of this warranty.
238 So.2d at 100.
The seller/vendor/supplier of the video monitoring equipment to Briscoe's is Stanco Communications Products, Inc. Capital is a financing lessor and the relationship between appellee and appellant realistically was a lender/secured party/debtor relationship. Appellee did not manufacture or sell the equipment and it was not sufficiently like a seller so as to impose Article 2 warranties, and we hold that such warranties do not apply to appellee under the Code.
Briscoe's complains second that Capital's supporting affidavit was defective, and third, that Capital was not entitled to judgment on the counterclaim as a matter of law.
Rule 56(e), Miss. Rules Civ.Proc., provides in part the following:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn and certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. [Remainder omitted]
The affidavit filed by Capital in support of its motion for summary judgment was insufficient in that the affiant does not state that the affidavit is made on personal knowledge and does not affirmatively state that the affiant was competent to testify to the matters stated therein. Also, there are no sworn or certified copies of the corporate records, referred to, attached to the affidavit. Briscoe's filed a motion to strike the affidavit as provided in Brown v. Credit Center, 444 So.2d 358 (Miss. 1983). Briscoe's also filed an opposing affidavit, which was also deficient, in that it does not affirmatively state the affiant was competent to testify. The effect of the deficient affidavits filed by Briscoe's and Capital was a motion for summary judgment unsupported by affidavits from either party. Rule 56(b) provides that a party against whom a counterclaim is asserted may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
Even though the affidavits were defective, we are of the opinion that considering the pleadings as a whole, there is no genuine issue of material fact as to whether or not the agreement in question is a lease and we are of the opinion that the lower court properly sustained Capital's motion for a summary judgment on the counterclaim.
Capital argues that the summary judgment was a final judgment, that Briscoe's filed its notice of appeal more than thirty (30) days after the motion for summary judgment was granted, and that this Court should not consider Briscoe's assignments of error. That argument is flawed under Rule 54(b), Miss.Rules Civ.Proc., because no final and appealable judgment was entered and the summary judgment was interlocutory until after Capital's claim on its complaint was subsequently adjudicated.

II.
Briscoe's contends that the lower court erred in granting summary judgment for Capital on its breach of contract claim because genuine issues of material fact existed, and Capital was not entitled to judgment as a matter of law. Briscoe's denied in its answer that it "defaulted" as alleged in the complaint. Briscoe's admitted that it did not make the payments under the contract because the equipment became inoperative and the necessary repairs were not made. It denied that any amount was owed to Capital, yet continually admitted being in default on the payments. The lease contract provided that upon a failure by Briscoe's to pay any rental or any other payment when due where such a failure continued for five (5) days, the lessee Briscoe's was in default. Without affidavits, the court, on a motion *623 for summary judgment, may also consider admissions in the pleadings. Smith v. First Federal Savings & Loan Ass'n, 460 So.2d 786 (Miss. 1984).
Briscoe's has not demonstrated anything of evidentiary value which posed the existence of a triable issue of fact. Regardless that Capital's affidavit may have been insufficient, Briscoe's did not allege any specific facts raising a genuine issue of material fact. Union Planters National Leasing, Inc. v. Woods, 687 F.2d 117, 119 (5th Cir.1982); Smith v. First Federal Savings & Loan Ass'n, supra. Assignment # 2 is without merit.

III.
Briscoe's filed a motion for leave to amend its answer after the lower court had entered summary judgment on its counterclaim July 18, 1984. The first motion for leave to amend was filed August 21, 1984. The motion was denied August 30, 1984, the same day the lower court granted summary judgment to Capital on its breach of contract claim. The motion was overruled because the amended answer attached to the motion raised the same defenses as in the original answer and counterclaim, and the counterclaim had already been disposed of. Briscoe's filed a second motion to amend on August 31, 1984, with the same proposed amended answer attached thereto, and it was denied by the lower court on September 19, 1984. Both motions were filed after summary judgment was sustained against Briscoe's.
In Bourn v. Tomlinson Interest, Inc., 456 So.2d 747 (Miss. 1984), the Court stated:
A majority of the court is now of the opinion that the chancellor did not err in overruling appellant's, plaintiffs below, motion to amend their pleadings after he had announced that he was sustaining motion for summary judgment.
456 So.2d at 749-50. See also 6 Wright & Miller, Federal Practice and Procedure § 1484 (1971). Amendments are liberally permitted in this state and are freely allowed when justice requires them. Only where the trial judge abuses his discretion will his ruling be reversed. We are of the opinion that the lower court did not abuse its discretion in denying the amendments and that the court acted properly in doing so. There being no reversible errors in the trial below, the judgments of the lower court are affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PATTERSON, C.J., and ROBERTSON and HAWKINS, JJ., file a separate concurring opinion.
ROBERTSON, Justice, concurring:
I concur in practically everything said in the majority opinion and particularly in the result. I write separately to express my view that, in the proper case, we should go further and incorporate into our law the "by analogy" approach to use of Article 2 of the Uniform Commercial Code in equipment leasing transactions. That approach is well expressed in the language of the Florida case of W.E. Johnson Equipment Co. v. United Airlines, Inc., 238 So.2d 98, 100 (Fla. 1970) quoted in the opinion of the majority in the case at bar.
We deal here with a major question of first impression in this state  should Article 2 govern leases as well as sales? Litigation in other states and scholarly commentary have revealed the point by no means free of difficulty.[1] I write here to provide more flesh to our discussion.
I concur that the warranties of Article 2 of the Uniform Commercial Code, Miss. Code Ann. §§ 75-2-313 through -317 (1972), are not available to Briscoe's Foodland, Inc. in defense of this action brought *624 by Capital Associates, Inc. I say this not because the instrument on its face is a lease agreement and not a contract of sale  a fact to my mind of little consequence, but because the transaction in question is not analogous to the concept of a sale as contemplated by UCC Article 2.
Where in an equipment lease the lessee acquires all of the indicia of ownership and the lessor functionally occupies the position of a seller, the provision of the Sales Article [UCC Article 2] should be analogy furnish the law we should apply  but only to the extent that the lease is the functional equivalent of a sale and the provisions of Article 2 otherwise "fit". I take this to be the view of the better reasoned cases considering the question. See, e.g., Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House, 59 Misc.2d 226, 298 N.Y.S.2d 392 (1969), reversed on other grounds, 64 Misc.2d 910, 316 N.Y.S.2d 585; Sawyer v. Pioneer Leasing Corporation, 244 Ark. 943, 428 S.W.2d 46 (1968); W.E. Johnson Equipment Co., Inc. v. United Airlines, Inc., 238 So.2d 98 (Fla. 1970); William B. Tanner Co. v. WIOO, Inc., 528 F.2d 262, 270 (3d Cir.1975); Tenavision, Inc. v. Neuman, 45 N.Y.2d 145, 148, 408 N.Y.S.2d 36, 38, 379 N.E.2d 1166, 1168 (1978); Damages, KLPR-TV, Inc. v. Visual Elecs. Corp., 327 F. Supp. 315, 326-28 (W.D.Ark. 1971), affirmed in part, 465 F.2d 1382 (8th Cir.1972); Addressograph-Multigraph Corp. v. Zink, 273 Md. 277, 284-88, 329 A.2d 28, 33-34 (1974); Sarfati v. M.A. Hittner & Sons, 35 A.D.2d 1004, 1005, 318 N.Y.S.2d 352, 354 (1970); Baker v. City of Seattle, 79 Wash.2d 198, 200-02, 484 P.2d 405, 407 (1971); Walter E. Heller & Company, Inc. v. Convalescent Home of First Church of Deliverance, 49 Ill. App.3d 213, 8 Ill.Dec. 823, 827, 365 N.E.2d 1285, 1289 (1977); Xerox Corporation v. Hawkes, 124 N.H. 610, 475 A.2d 7 (N.H. 1984).
Adopting the "by analogy" approach, the Idaho court in Glenn Dick Equipment Co. v. Galey Construction, Inc., 97 Idaho 216, 222, 541 P.2d 1184, 1188-90 (1975), stated:
Reasoning by analogy does not require us to apply Article 2 in toto to a lease; rather, we need apply only those provisions which are sufficiently analogous. In order to determine which provisions are applicable, we will look to the commercial setting in which the problem arises and contrast the relevant common law with Article 2  we will use Article 2 as `a premise for reasoning only when the case involves the same considerations that gave rise to the Code provisions and an analogy is not rebutted by additional antithetical circumstances'.
541 P.2d at 1190.
In my view Miss. UCC Article 2 provides rules which by analogy should be enforced in the conventional two party transaction wherein the lessor in a very real sense is the functional equivalent of a seller and the lessee a purchaser or buyer.
The case at bar should be and can be sharply distinguished from the two-party transaction. This case arises from a three-party transaction. As the majority correctly points out, the seller/vendor/supplier is Stanco Communications Products, Inc. Capital Associates, Inc. is a financing lessor. The purchaser/lessee is Briscoe's Foodland, Inc. The lease transaction was one under which Briscoe acquired video monitoring equipment for use as a party of Briscoe's store security system. The relationship between Stanco and Briscoe was functionally a vendor-purchaser relationship. Obviously, the UCC warranties apply to Stanco.
The relationship of Capital and Briscoe was functionally a lender/secured party-debtor relationship. As Capital did not manufacture or sell or distribute the equipment, it may be said not sufficiently like a seller so as to impose the Article 2 warranties. Capital is extending credit, not selling goods. Capital is thus a "finance lessor", not a "merchant lessor". Therefore, because the lessor generally has no reason to know of the particular purpose of the lessee, who has dealt primarily with the supplier of goods, and because the lessee has not relied upon the lessor's skills and *625 judgment in the design, manufacture and selection of the goods, there should be no implied warranty of fitness for a particular purpose. See, e.g., W.E. Johnson Equipment Co. v. United Airlines, Inc., 238 So.2d 98, 100 (Fla. 1970).
Beyond this I note that Miss. Code Ann. § 11-7-18 (1972) purports to save certain warranties from any purported disclaimer. Concluding as I do that Capital furnished Briscoe no warranty of fitness in the first place, there was no warranty for Section 11-7-18 to save. I therefore concur in today's decision.
One final comment. The majority (at page 621) observes that
nowhere [within the lease agreement] is there a provision that title will pass or be vested in lessee.
I do not understand any part of the decision of the case to turn on the point. Still, the comment seems inappropriate in view of the diminished role of "title" in the era of the Uniform Commercial Code.
I think the point not fairly debatable that, when determining whether Article 2 applies by analogy to a lease, one question which should not be asked is "Where is the title?" One of the fundamental purposes of the draftsmen of the Uniform Commercial Code was to eliminate resort to the concept of title in resolving controversies arising out of commercial transactions. While this effort was not totally successful, compare Miss. Code Ann. § 75-2-401 (1972) and § 75-9-202 (1972), the Official Comment to Miss. Code Ann. § 75-2-101 (1972) significantly states:
The arrangement of the present Article [the Sales Article] is in terms of contract for sale and the various steps of its performance. The legal consequences are stated as following directly from the contract and action taken under it without resorting to the idea of when property or title passed or was to pass as being the determining factor. The purpose is to avoid making practical issues between practical men turn upon the location of an intangible something, the passing of which no man can prove by evidence and to substitute for such abstractions proof of words and actions of a tangible character.
Amen.
PATTERSON, C.J., and HAWKINS, J., join in this opinion.
NOTES
[1] This assignment in the counterclaim is considered first since it was first presented and disposed of by the lower court.
[1] The cases are collected in Annotation, What Constitutes A Transaction, A Contract For Sale, Or A Sale Within The Scope of UCC Article 2, 4 A.L.R. 85 (1981) and 1985 pocket part thereto. The best discussion of the overall question I have found is Boss, Panacea Or Nightmare? Leases In Article 2, 64 B.U.L.Rev. 39 (1984).