529 So.2d 640 (1988)
CAPITAL ASSOCIATES, INC.
v.
SALLY SOUTHLAND, INC., d/b/a Sunflower of Brookhaven and Frank Malta.
No. 57595.
Supreme Court of Mississippi.
July 20, 1988.
Rehearing Denied August 31, 1988.
Pat Henley, Henley, Lotterhos & Henley, Jackson, for appellant.
*641 Daniel H. Fairly, Stratton & Fairly, Brookhaven, for appellees.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Sally Southland, Inc. (Southland), and Frank Malta (Malta), Southland's major if not sole shareholder, were sued by Capital Associates (Capital) in the circuit court of Lincoln County upon a lease agreement executed by Southland unto Capital, and upon which Malta executed a personal guaranty. Capital appeals from a judgment in favor of these defendants.
Because Capital was entitled to a judgment as a matter of law, we reverse and render judgment in favor of Capital on the lease contract, and remand for assessment of the amount due under the Lease Agreement.

FACTS
In 1981 Malta purchased a Sunflower Super Market (Sunflower) in Brookhaven. Around June of 1982 Malta was approached by Wilford Welch (Welch), an employee of Stanco Communications (Stanco), to purchase or lease surveillance equipment. Because Malta was moving the Sunflower Store to another location across town, he decided the surveillance equipment was necessary for a "dead spot" in the store. On June 23, 1982 Malta executed a lease agreement with Capital for sixty months at $250 per month. Welch, who carried blank copies of Capital's lease forms, filled out and witnessed the Capital/Southland lease agreement. At the same time, Malta also executed a guaranty for Southland. The lease was approved by Capital in Atlanta, Georgia, and a copy later returned to Malta.
Also on June 23, 1982, Malta acknowledged delivery and acceptance of 20 "dummy" cameras, one live camera, one VCC box, one 19" monitor, and one 9" monitor. The "dummy" cameras usually have a red light to give the appearance to the public that they are live cameras; they, however, contain no inner workings. Malta testified that he did not want "dummy" cameras, but accepted them because of Welch's assurance that the "dummy" cameras would do the job and further because he was given a 100% trade-in on inactive cameras for live cameras. The equipment was installed in the Sunflower in approximately one and one-half days.
Malta testified that he was never satisfied with the "dummy" cameras but did continue making payments through February of 1984. Malta made requests to both Capital and Stanco to upgrade the cameras. At one time, someone did come to the store to look, but no new cameras were put into the building. Malta continued making payments, but did request with several of the payments that the equipment be upgraded. Finally, Malta decided that he would get a response if he quit paying. He, therefore, made his last payment in February of 1984. Capital then notified Malta that the lease payments were still due and that the lease was non-cancellable. Malta was also notified that his agreement to upgrade the equipment was with Stanco and not with Capital.
In March Malta began to negotiate a sale of the Sunflower store. The sale finally became effective April 14, 1984. The buyers of the store decided to create a new decor inside the store and chose to take down the cameras. At trial Malta testified he believed the cameras were then packed and stored somewhere in the store.
Capital filed suit on September 29, 1984, to recover $9,500 unpaid balance and seeking $862 (residual), $587.15 (state sales tax), $105.64 (late charges), $344.80 (personal property tax) for a total of $11,399.59 plus $3,799.86 as attorney's fees for a grand total of $15,199.45, plus interest. On the day of trial, without notice to Capital, Southland and Malta moved to dismiss Capital's claim. The motion stated that Capital is a foreign corporation, incorporated in the state of Florida. Capital had obtained a certificate of authority to do business in Mississippi on January 4, 1982, but the certificate was suspended on November 4, 1985. Southland and Malta believed that pursuant to Miss. Code Ann. *642 §§ 27-13-27 and 79-3-247 (1972) Capital was barred from prosecuting this action. The circuit judge overruled the motion, stating:
This matter coming on to be heard on motion to dismiss, and appears to the court that the plaintiff, Capital Associates, Inc., is a Florida corporation, foreign to the State of Mississippi, and on January 4, 1982, obtained a Certificate of Authority to do business in the State of Mississippi, that the contract entered upon in this case was executed on September 23, 1982, and the suit was filed on September 29, 1984. It further appears that on November 4, 1985, the plaintiff was suspended by order of Commission of Franchise Tax and that as of January 17, 1986, the records of the Office of the Secretary of State of the State of Mississippi did not reveal that said suspension has been set aside. The court has considered Section 27-13-27 and Section 79-3-247. However, this case was pending and the contract suit was executed at a time when the plaintiff had apparent authority to do business in the State of Mississippi. The Court holds tha [sic] the suspension of the authority to do business in the State of Mississippi by a foreign corporation by order of Commission of Franchise Tax of the Office of the Secretary of State of the State of Mississippi does not cause the pending cases to abate or to be terminated. Therefore, the motion to dismiss is overruled.
Trial proceeded with the pertinent portions of the lease introduced into evidence as follows:
IMPORTANT: Vendor and its representatives are not the agents of Lessor. Neither Vendor nor its representatives can waive, vary or alter any of the Terms and Conditions hereof. Lessor does not warrant merchantability or fitness for any particular use of equipment and disclaims any other warranty, express, implied or statutory. Lease payments will be due despite dissatisfaction with equipment for any reason.
* * * * * *
2... . THE LESSEE REPRESENTS THAT THE LESSEE HAS SELECTED THE EQUIPMENT LEASED HEREUNDER PRIOR TO HAVING REQUESTED THE LESSOR TO PURCHASE THE SAME FOR LEASING TO THE LESSEE, AND LESSEE AGREES THAT THE LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND /OR ITS QUALITY, AND AS BETWEEN LESSEE AND LESSOR'S ASSIGNEE, LESSEE LEASES THE EQUIPMENT "AS IS" ... NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE VENDOR SHALL BE BINDING ON THE LESSOR NOR SHALL THE BREACH OF SUCH RELIEVE LESSEE OF, OR IN ANY WAY AFFECT, ANY OF LESSEE'S OBLIGATIONS TO THE LESSOR AS SET FORTH HEREIN... . If the equipment is not properly installed, does not operate as represented or warranted by the vendor or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the Vendor and shall nevertheless pay Lessor all rent payable under this lease. Lessor agrees to assign to Lessee, solely for the purpose of making and prosecuting any such claim, any rights it may have aginst [sic] the Vendor for breach of warranty or representations respecting the Equipment. Notwithstanding any fees that may be paid to Vendor or any agent of Vendor, Lessee understands and agrees that neither the Vendor nor any agent of the Vendor is an agent of Lessor and that neither the Vendor nor his agent is authorized to waive or alter any term or condition of this lease. [Emphasis theirs]
[Lease Agreement]
Malta, on behalf of Southland, also signed a "Delivery and Acceptance Receipt," *643 which in capital letters stated in part:
LESSE [sic] AGREES THAT THE LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTES [sic] OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, A [sic] TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY; AND AS BETWEEN LESSEE AND LESSOROR [sic] LESSOR'S ASSIGNEE, LESSEE LEASES THE EQUIPMENT "AS IS" AND LESSEEAFFIRMS [sic] THAT IT HAS NO DEFENSE OR COUNTER-CLAIMS AGAINST LESSOR IN ONNECTION [sic] WITH THE LEASE.
In the course of trial, over the objections of Capital, the court admitted into evidence Exhibits D-2 and D-3, which are copies of invoices from Stanco to Capital. The back of Exhibit D-2 states:
Stanco guarantee
STANCO WILL GUARANTEE 100% TRADE-IN VALUE ON ITS INACTIVE CAMERA FOR A STANCO ACTIVE CAMERA. STANCO WILL GIVE 100% CREDIT FOR ANY STANCO INACTIVE CAMERA TOWARDS THE PURCHASE OR LEASE OF A STANCO ACTIVE CAMERA.
It also states that the cameras are shipped to Sally Southland, Inc., d/b/a as Sunflower in Brookhaven and it is signed by Stanley A. Mislow, President, Stanco Communications Products, Inc. Exhibit D-3 states on the back:
STANCO FIVE-YEAR WARRANTY PARTS AND LABOR.
PARTS AND LABOR WARRANTED FIVE YEARS FROM DATE OF INSTALLATION  VIDEO HEAD 90 DAYS ONLY. THIS WARRANTY COVERS NORMAL USE, BUT DOES NOT COVER DAMAGE FAILURE WHICH RESULTS IN ALTERATIONS, ACCIDENT, MISUSE, ABUSE, NEGLECT, WATER, FIRE, WINDSTORM, EARTHQUAKE, LIGHTNING OR HIGH VOLTAGE.
Exhibit D-3 also states the cameras are shipped to Sally Southland, Inc., d/b/a Sunflower Brookhaven, and is signed by Stanley A. Mislow, President, Stanco Communications Products, Inc. Also, over objection of Capital, the court granted the following instruction for Malta, which states:
The Court instructs the Jury that if you find from a preponderance of the credible evidence in this case that on or about June 23, 1982, the plaintiff, Capital Associates, Inc., or its agent or representative, gave unto Frank J. Malta a guarantee or warranty that it would trade inactive or dummy cameras for active cameras and would give 100% credit and trade-in value to Frank J. Malta for same and that the plaintiff materially breached said warranty or guarantee by failing to update said equipment at the defendant's request, and if you further find that because of said failure the defendant Frank J. Malta defaulted on his payments and terminated his agreement with the plaintiff, the Court instructs the Jury that the defendant lawfully and rightfully terminated said agreement and it is your sworn duty to return a verdict for the defendants.
There was a jury verdict in favor of Malta and judgment entered thereon. Capital moved the court for a judgment notwithstanding the verdict, which was overruled. Capital has appealed. Southland and Malta have cross-appealed.

LAW

CROSS-APPEAL
Southland and Malta cross appeal assigning as error the circuit judge's denial of their motion to dismiss Capital's claim. To clarify the judge's ruling, the following is a list of dates on which important events occurred:
1-04-82 Capital obtained "Certificate of Authority" to do business in Mississippi.

*644 9-23-82 Southland entered into lease agreement with Capital.
9-29-84 Capital filed suit for the lease payments due under the contract.
11-04-85 Capital was suspended for failure to pay franchise tax.
1-20-86 The first day of trial. The circuit judge denied Southland and Malta's motion to dismiss.
5-21-86 Capital reinstated.
There is a serious question whether Capital was doing such business in Mississippi, as required a Certificate. Mid-Continent Refrigerator Co. v. Starks, 298 So.2d 714 (Miss. 1974). In any event, the facts show that the day the case was set for trial, Southland and Malta presented a motion to dismiss. The court overruled the motion. We cannot say the court was without authority to proceed. Bryant Construction Co., Inc. v. Cook Construction Co., Inc., 518 So.2d 625 (Miss. 1987).
The 5th Circuit Court of Appeals in PLM v. E. Randall Co., 797 F.2d 204 (5th Cir.1986), interpreted Mississippi's suspension statute as non-retroactive. PLM had filed suit during its suspension and was not allowed to maintain the suit. In the case sub judice Capital entered into the lease agreement and filed suit while it had authority to do business in Mississippi. The suspension occurred only after suit was filed. This Court has previously stated that "in order to avail itself of the state courts to enforce a cause of action, a foreign corporation doing business in this state must have qualified to do business when the cause of action accrued." Park v. Lin-Co Producing Co., 197 So.2d 228, 230 (Miss. 1967). Capital was authorized to do business in this state when the cause accrued.
A cause of action active on the trial docket should not be lightly dismissed for some collateral matter having nothing to do with the merits of the case. The circuit judge no doubt had the discretionary authority to require Capital as a condition to proceeding to trial to become reinstated. The circuit judge did not make this requirement of Capital and we do not find the circuit judge in error for failing to require Capital to become reinstated. We find no merit in the cross-appeal.

DIRECT APPEAL
Capital has assigned as error the introduction into evidence of the warranty and guarantee of Stanco, the instruction making it a jury issue whether Welch was an agent of Capital, and the failure to grant a judgment notwithstanding the verdict of the jury. We agree.
There was no evidence to show Welch was an agent of Capital, other than alleged statements made by Welch himself, or that the Stanco warranties were in any way obligations of Capital. Capital was, therefore, entitled to judgment in its favor as a matter of law on the Lease Agreement.
Clearly, Welch was not an express agent. There was no express contract between Capital and Welch. Indeed, the Lease Agreement which Southland signed in bold type expressly excluded Stanco and Welch as any of Capital's agents and expressly disclaimed any warranties made by Stanco. Under the authority of Turner v. Williams, 257 So.2d 525 (Miss. 1972), the question of Welch's agency was removed from the jury. "[W]e can only remind [Southland] of the legal maxim, which states that a person, dealing with an agent, must know at his peril the extent of the agent's authority to bind his principal [Citations omitted]." Bruner v. U. of Southern Miss., 501 So.2d 1113, 1116 (Miss. 1987).
Also, in order for there to be some implied agency, Capital would have had to authorize Stanco or its representatives to perform acts which would reasonably lead third persons to believe Stanco's representatives were also representatives of Capital. The circuit judge believed that because a Stanco representative had possession of, and filled in the blank lease form, that this made a jury issue whether Welch was an agent of Capital. The lease form, however, states in several places (both in bold and/or capitalized type) that the vendor's representatives were in no way agents of Capital. The evidence is undisputed that Welch *645 was not an employee and received no compensation from Capital. At most, there is testimony that Welch stated to Malta that he was an agent of Capital. Statements of the alleged agent Welch, however, are not sufficient to prove an agency relationship exists. Austin v. Gulf States Finance Co., 308 So.2d 90 (Miss. 1975). Southland's complaint should have been directed to Stanco and Welch.[1] The lease expressly assigned any rights for breach of warranties from Capital to Southland. See Briscoe's Foodland v. Capital Associates, 502 So.2d 619 (Miss. 1986).
It, therefore, follows that the court should have entered judgment in favor of Capital under the lease agreement. We, therefore, remand to the circuit court for a computation of damages under the agreement noting that there is a serious question whether Capital is entitled to residual damages.
JUDGMENT REVERSED AND RENDERED AS TO LIABILITY; CAUSE REMANDED TO THE CIRCUIT COURT FOR COMPUTATION OF DAMAGES UNDER LEASE AGREEMENT; AFFIRMED ON CROSS-APPEAL.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., and ANDERSON, J., dissent.
DAN M. LEE, Presiding Justice, dissenting:
Because the majority holds that Capital Associates, Inc. may maintain its suit despite its suspension, and because it holds that as a matter of law Capital Associates cannot be bound by warranties made by its negotiating agent, I respectfully dissent.
There are three different reasons why I think we should affirm the take-nothing judgment rendered below. First, Capital Associates could not maintain suit on this contract. Second, the jury found Stanco Communications Products and its salesman, Wil Welch, were agents for Capital Associates and this decision was within the law. Third, I think the Uniform Commercial Code should apply to this transaction by analogy. Applying the U.C.C. to this case should mean striking down the warranty of disclaimer as unconscionable, or at the very least it should mean remanding for a new trial.
I cannot agree with the majority's premise that a corporation need only be authorized to do business at the time the action accrues and it files suit.
Parker v. Lin-Co Producing Co., 197 So.2d 228 (Miss. 1967), does not support the majority's premise. In Parker this Court did not hold that being qualified to do business at the time the case of action accrued was sufficient in and of itself. Instead, the Parker decision makes this merely a prerequisite to bringing suit. The issue is whether suspension revokes the right previously available. The plain answer is yes. In Bryant Construction Co. v. Cook Construction Co., 518 So.2d 625, 631 (Miss. 1987), we stated:

*646 When the corporation is suspended, it loses all rights "acquired by the form of the organization," [Miss. Code Ann.] § 27-13-27, one of which, no doubt, is the right to sue in the corporate name. Thus, during its suspension, Bryant had no right to bring suit in the corporate name.
Though Bryant dealt with a corporation seeking to bring suit, the point applies equally here. When suspended, the corporation loses the right to bring suit just as sure as it loses any other right. If the corporation has no right to bring the suit, it also loses the right to prosecute or maintain that suit to conclusion. Nothing in Miss. Code Ann. § 79-3-247 (1972)[1] alters this interpretation.
Section 79-3-247, now repealed, provided that no corporation not obtaining a certificate of authority to do business "shall be permitted to maintain any action, suit or proceeding in any court of this state." Thus, if "maintain" includes beginning as well as prosecuting claims, then Capital Associates lost its authority to prosecute this case when it became suspended.
In Parker, the Court quoted with approval this passage from Corpus Juris Secundum:
It has been held that the word "maintain," when applied to actions, has three meanings. One meaning of the term is to commence; to begin; to bring; to institute. However, it has been said with reference to something more than to commence, and carries a different meaning from "begin" or "institute." Thus the second meaning of the word is to continue; to carry on; to support, as contradistinguished from to institute, the action that has already been brought; to persevere in or with; to commence and prosecute to a conclusion. In accordance with this view, it has frequently been said that to maintain a suit is to uphold, continue on foot, and keep from collapse a suit already begun. Where the word is employed to signify either the first or second meaning, it may comprehend the institution as well as the support of the action, including the commencement of or right to institute an action, and in this sense it implies that an action must be begun before it can be maintained. The third meaning of the term is to commence and prosecute to a conclusion that which has already begun. In addition, the term is often used to signify an action yet to be instituted. A prohibition against the maintaining of an action or suit may or may not indicate a prohibition against beginning or commencing it.
197 So.2d at 229. [emphasis added] By requiring a corporation to qualify before initiating suit, the Court in Parker seemingly adopted at least the first meaning of "maintain" mentioned above. In light of our suspension statute, I would ascribe to the word "maintain" the disjunctive meaning of either instituting or prosecuting suit. Since Capital Associates failed to remain a corporation in good standing during the pendency of this suit, it cannot maintain, that is continue, this suit.
Obviously my view of § 79-3-247 may not apply in the future in light of legislative revision to the "door closing" statute. See Miss. Code Ann. § 79-4-15.02 (Supp. 1987) (effective January 1, 1988).
This interpretation should apply to § 79-3-247 as it read at time of trial, however. My interpretation creates no overly oppressive hardship for the corporate entity, since if it were qualified to bring suit according to Parker it need only remove the suspension to renew prosecution of its claim. See Bryant Construction Co., 518 So.2d at 631. Here, Capital Associates did not remove the suspension. I would hold that Capital Associates is thus barred from prosecuting this suit. I would sustain the cross-appeal of Sally Southland and Frank Malta.
Even if the Court does not accept my interpretation of Miss. Code Ann. § 79-3-247, there are other reasons why we should not disturb this judgment.
*647 The majority finds that the only proof of Welch's and Stanco's agency with Capital Associates lies in Welch's own statements, which the majority holds is insufficient. Were this the only proof I might agree, but it is not. The contract itself proves Welch's agency beyond peradventure. The lease agreement form bears at top the prominent printed name of Capital Associates. The contract recites that Capital Associates is the lessor, and the first numbered paragraph of the agreement states that "Lessor hereby leases to Lessee." Though Capital Associates might have retained the authority to reject the lease, this would at most mean that Capital considered the lease an offer it could reject at its leisure. Once accepted, Capital received the fruits of the contract through the efforts of Welch and Stanco. Without doubt, Welch negotiated and procured the contract on behalf of Capital.
The Arkansas Supreme Court, in a case having a very similar factual setting, found that a jury issue existed as to the procuring party's agency. In Sawyer v. Pioneer Leasing Corp., 244 Ark. 943, 428 S.W.2d 46 (1968), the owner of a small store leased an ice making machine from Pioneer Leasing Corp. The evidence showed a man named Barnett presented to Sawyer the lease and actually procured the contract. Barnett did not work directly for Pioneer, but rather for an equipment supplier, which, like Stanco in the case at bar, would negotiate the lease then sell the equipment to a financing party. Pioneer, like Capital Associates, purchased the equipment and became lessor. The ice machine broke down and Pioneer brought suit to recover the balance of the contract price when Sawyer refused to continue payments. The court stated:
Nonetheless, it is undisputed that Barnett was the man who presented the contract to Sawyer, and obtained his signature thereto. In fact, it appears that all proceedings in connection with the execution of the lease by appellant were handled by Barnett  who did not testify. Certainly, the obtaining of the lease was called to the attention of appellee company, for the instrument was subsequently executed by the president of the company, Barclay McFadden  evidence that the contract was thus ratified. More than that, the company accepted payments from Sawyer of over $600.00. In Mark v. Maberry, 222 Ark. 357, 260 S.W.2d 455, we held that when one accepts the fruit of another's agency in the sale of property, he cannot subsequently be heard to disclaim such agency.... We think the testimony on the question of agency was certainly sufficient to make a jury question.
Id. at 948, 428 S.W.2d at 49. The court went on to address whether the lease was sufficiently like a sale so that Pioneer should be held to warranties implied by the Uniform Commercial Code. The court held in the affirmative, but remanded for a determination of whether Pioneer's warranty disclaimer was sufficiently conspicuous. About this more will be said later.
Under the persuasive reasoning of the Arkansas court in Sawyer, I think the evidence presented a jury question on the issue of agency, which the jury resolved in favor of Malta and Sally Southland. The majority correctly points out that one who deals with an agent "must know at his peril the extent of the agent's authority to bind his principal." Bruner v. U. of Southern Mississippi, 501 So.2d 1113, 1116 (Miss. 1987). However, it is also true that a principal may ratify the unauthorized acts of his agent. See Consumers Credit Union v. Swilley, 243 Miss. 838, 849, 138 So.2d 885, 889 (1962); Aetna Ins. Co. v. Singleton, 174 Miss. 556, 164 So. 13 (1936). I would hold that a jury question was likewise presented as to whether Capital Associates ratified Stanco's warranties, an issue the jury resolved in favor of Malta and Sally Southland by determining the warranties were part of the contract.
Frank Malta, who negotiated the lease for Sally Southland, testified that Stanco's warranties were printed on the back of the invoice transferring the video equipment to Capital Associates. Malta's copies of the written warranties substantiated this claim. The equipment sale from Stanco to Capital Associates was part and parcel of the lease *648 contract. By accepting the invoice with the lease, the jury could and did find that Capital Associates made the warranties part of the contract. Plaintiff's instruction P-8, requiring the jury to find that a Capital Associates executive altered, amended, modified, terminated or otherwise changed the contract to include the warranty, and defendant's instruction D-5, which required the jury to find that Capital Associates' agent gave the warranty, sufficiently instructed the jury on both the agency and the ratification issues. For this reason alone, I would affirm the jury verdict.
Even if the Court would not go this far, the lease appears to be the functional equivalent of a sale to which we should apply the warranties implied by the Uniform Commercial Code. If applied by analogy, the implied warranties present at least a jury issue as to whether the replacement of dummy cameras is a warranty of fitness for a particular purpose, given Stanco's limited agency relationship with Capital Associates.
Pivotal here are our holdings in J.L. Teel Co., Inc. v. Houston United Sales, 491 So.2d 851 (Miss. 1986), and Briscoe's Foodland v. Capital Associates, 502 So.2d 619 (Miss. 1986).
In Teel, this Court held that Article Two of the Uniform Commercial Code furnished the rules of decision in a case involving a two-party lease which, under the totality of the circumstances, was the functional equivalent of a sale. Teel, 491 So.2d at 859.
Though not mentioned in the majority opinion, the proof shows this lease was the functional equivalent of a sale. There was evidence that the value of the video equipment was very low at the expiration of the 60-month lease. There was testimony by a Capital Associates employee that it regularly informed its customers at the end of the term that they could purchase the video equipment. Finally, the lease agreement put upon the lessee the risk of loss and the duty to maintain the equipment. These factors are among the criteria we look to determine whether a lease is the "functional equivalent of a sale." Teel, 491 So.2d at 858-59.
The majority sub silentio relies upon Briscoe's Foodland where we held a nearly identical video monitoring equiment lease negotiated by Stanco Communications Products, Inc. and serviced by Capital Associates was not subject to the dictates of the Uniform Commercial Code. This Court held that under the circumstances Capital Associates was a "financing lessor" that should not be considered a "seller" for purposes of applying the U.C.C. Article 2 warranties by analogy. 502 So.2d at 622.
If the lease is the functional equivalent of a sale, however, and Capital Associates is a party to the lease and benefits from the limited agency of Stanco and Wil Welch, then only in an overly restrictive sense do we have a three-party lease. I find no reason not to hold Capital Associates to the analogous implied warranties. See Sawyer, supra.
Aside from express agency, however, there is yet another rationale for applying the U.C.C. by analogy.
As explained in a recent law review article, any distinction between a two-party and a three-party lease is insufficient grounds for limiting application of the Uniform Commercial Code. It would provide the undesirable and unwarranted opportunity to every party in the procurement chain to avoid application of U.C.C. rules of decision by employing a separate financing arm. Note, Uniform Commercial Code  Should the U.C.C. Furnish the Rules of Decision in Equipment Leasing Controversies?, 7 Miss.C.L.Rev. 209, 224-27 (1987).
At least two courts have applied the U.C.C. as the basis for the rules of decision with three-party leases. Capital Associates, Inc. v. Hudgens, 455 So.2d 651 (Fla. Ct.App. 1984); United States Leasing Corporation v. Franklin Plaza Apartments, Inc., 65 Misc.2d 1082, 319 N.Y.S.2d 531 (N.Y. Sup. Ct. 1971). In both cases, the courts suggested factual issues existed as to whether certain terms of the contracts were unconscionable. In United States Leasing Corp., the Court found a factual issue concerning the unconscionability of *649 attempting to isolate the obligation to pay from the ability to assert meritorious defenses. 319 N.Y.S.2d at 536.
Capital Associates' use of three-party leases has generated much litigation. See Food Associates, Inc. v. Capital Associates, Inc., 491 So.2d 345 (Fla.Ct.App. 1986); Hudgens, supra; Capital Associates, Inc. v. Keoho, 173 Ga. App. 627, 327 S.E.2d 586 (1985); Capital Associates, Inc. v. Zabel, 172 Ga. App. 19, 322 S.E.2d 67 (1984); Groover Engineering Co. v. Capital Associates, Inc., 169 Ga. App. 480, 313 S.E.2d 498 (1984); Briscoe's Foodland, supra.
In these cases it appears courts have struggled at least in part with how best to protect the interests of both lessee and lessor. This struggle could be greatly simplified if we follow the New York court's lead by holding that a factual issue of unconscionability is presented by attempting to separate the obligation to pay from the implied warranties. Capital Associates actually purchases the leased property from the vendor by the same instrument establishing the lease. Since the original vendor has sold its merchandise to Capital Associates, normal buyer remedies for breach of warranties, such as recission (or revocation of acceptance under the U.C.C.), are unavailable if we allow this disclaimer to stand. Capital, meanwhile, continues to receive rent on equipment it owns under the cloak of "financing lessor."
Clearly, Capital is the vendor in everything but name, and its use of this three-party lease form should not provide to it the benefit of insulating it from U.C.C. warranties.
We should abandon our unduly limited application of Teel, and hold that Capital Associates should be considered a "seller," and, therefore, also subject to the U.C.C. implied warranties by analogy. The express disclaimer of warranty of merchantability or the implied warranty of fitness for a particular purpose would thus be of no effect. Miss. Code Ann. § 11-7-18 (1972), Miss. Code Ann. § 75-2-719 (1972).
Nothing I say here should be taken to suggest that the same result should follow in cases dealing with commercial paper and alleged holders in due course. We deal only with what amounts to a three-party sale where one procuring party clearly acts as agent for a named principal.
In summary, I would hold that Capital Associates ratified the warranty representation of its agent, and affirm the jury verdict rendered below. In the alternative, Capital Associates should be treated as a "seller" to the end that we should apply the U.C.C. as the rules of decision. At the very least a factual issue remains whether these warranties established a successful defense to Capital Associates' action for the contract price and at a new trial the jury may be properly instructed as to Malta's and Sally Southland's implied warranty defense.
ANDERSON, J., joins this dissent.
NOTES
[1] Appellees cite no authority that would make a lessor responsible for warranties of a vendor. There may, however, be occasions when, depending upon the "totality of the circumstances," closeness and affiliation between a finance company and a seller are such that a court of equity could treat them as one, or that the seller was the agent of the lender. See J.L. Teel Co., Inc. v. Houston United Sales, 491 So.2d 851 (Miss. 1986); Glenn Dick Equipment Co. v. Galey Construction, Inc., 97 Idaho 216, 541 P.2d 1184 (1975); Redfern Meats, Inc. v. Hertz Corp., 134 Ga. App. 381, 215 S.E.2d 10 (1975); Annot. 4 A.L.R.4th 85 (1981). No proof was offered in this case to justify such a result.

Our distinguished colleague in his dissent states that our Uniform Commercial Code should apply to a transaction as this. Perhaps it should.
This, however, makes no difference in this case. The contract was not "unconscionable." Miss. Code Ann. § 75-2-302; Briscoe's Foodland, Inc. v. Capital Associates, Inc., supra (Robertson, J., specially concurring); Walter E. Heller & Co., Inc. v. Convalescent Home, etc., 49 Ill. App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285 (1977); Electronics Corp. of America v. Lear Jet Corp., 55 Misc.2d 1066, 286 N.Y.S.2d 711 (1967); Westinghouse Credit Corp. v. Chapman, 129 Ga. App. 830, 201 S.E.2d 686 (1973); Irving Leasing Corp. v. M & H Tire Corp., 16 Ohio App.3rd 191, 475 N.E.2d 127 (1984); 67 Am.Jur.2d Sales, § 238, p. 519, notes 67-68.
[1] Effective January 1, 1988, § 79-3-247 stands repealed and it is replaced by 79-4-15.02, which substantially alters the corporation's right to belatedly qualify.