599 So.2d 576 (1992)
DAVID NUTT & ASSOCIATES, P.C. and David Nutt, Individually
v.
FIRST CONTINENTAL LEASING CORPORATION.
No. 90-CA-0731.
Supreme Court of Mississippi.
May 20, 1992.
*577 R. Keith Foreman, Floyd M. Sulser, Jr., Bennett Lotterhos Sulser & Wilson, Jackson, for appellants.
Janet McMurtray, Alan W. Perry, Forman Perry Watkins & Krutz, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from a June 13, 1990, order of the Circuit Court, First Judicial District of Hinds County, granting the Appellee's Motion for Summary Judgment. Finding that the Appellant's argument that there was a genuine issue of material fact as to whether the three-party equipment lease he entered into was the functional equivalent of a sale to be without merit, we affirm the order of the Circuit Court.

I.
The transaction at issue is a classic three-party lease arrangement wherein the lessor purchased equipment specifically requested and selected by the lessee from a vendor/supplier and in turn, entered into a lease agreement with the lessee. David Nutt, the lessee, had previously leased a computer system for his law offices from the lessor, First Continental Leasing Corporation in Hattiesburg. Seeking to upgrade the system, he wrote to First Continental on November 17, 1987, requesting financing for a new system and negotiation of a settlement of the existing lease. Nutt's correspondence indicates that he had selected both the equipment package and the vendor/supplier prior to contacting First Continental.
Following Nutt's instructions, First Continental purchased an IBM-AT Compatible/OS-2 Computer System from its designated vendor/supplier, Corporate Systems, Inc. On December 14, 1987, First Continental and Nutt entered into a lease agreement whereby Nutt would lease the IBM system purchased by the lessor for a four-year term, consisting of forty-eight payments at $665.65 per month.
The lease explicitly stated that the lessor makes no express or implied warranties; that any claims arising from problems with the equipment shall be made against the vendor/supplier; that notwithstanding any claims against the vendor/supplier, the lessee shall continue to make payments to the lessor; and that the lessor assigns to the lessee all rights it has against the vendor/supplier. It further provided that the lessee had no option to purchase the equipment or otherwise acquire title or ownership to it. The lessee was required to insure the equipment and keep it in good repair, and assumed the entire risk of loss or damage to the equipment.
The new system was apparently incompatible with the demands of Nutt's law practice. Accordingly, after seventeen months, Nutt ceased making payments to the lessor. On September 7, 1989, First Continental filed a complaint against Nutt, asserting that his failure to pay was a breach of the lease agreement. In his Answer, Nutt asserted as an affirmative defense that the lease was the functional equivalent of a sale and thus governed by Article 2 of the Uniform Commercial Code, codified at Miss. Code Ann. § 75-2-101, et seq. Further, he counterclaimed that First Continental had breached the implied warranties of merchantability and fitness outlined *578 in Miss. Code Ann. §§ 75-2-314 and 315.
On January 30, 1990, First Continental filed a motion for summary judgment. Following a hearing on the motion for summary judgment, the Circuit Court entered an order against Nutt in the amount of $25,236.18 on May 24, 1990. The judgment was amended on June 10, 1990, assessing Nutt further with post-judgment interest and the costs of litigation.

II.
Article 2 of the Uniform Commercial Code, codified at Miss. Code Ann. §§ 75-2-101 et seq., includes provisions for implied warranties in contracts for the sale of goods. § 75-2-314(1) provides for an implied warranty of merchantability, while § 75-2-315 sets forth the implied warranty of fitness for a particular purpose. Under our current jurisprudence, these implied warranty provisions are applicable by analogy to certain two-party lease agreements, "but only to the extent that the lease is the functional equivalent of a sale and the provisions of Article 2 otherwise `fit'." J.L. Teel Company, Inc. v. Houston United Sales, Inc., 491 So.2d 851, 855 (Miss. 1986) (emphasis in original). Nutt asserts that, in looking at "the totality of the circumstances" surrounding his transaction with First Continental, the equipment lease was the "functional equivalent of a sale." He contends, therefore, that the Circuit Court erred in granting First Continental's motion for summary judgment because there was a genuine issue of material fact regarding the nature of the transaction. However, we have held that Article 2 warranties are not applicable in those three-party lease transactions where, as in the case sub judice, the lessor is merely the financing arm of the transaction, separate and distinct from the seller, vendor or supplier of the equipment covered by the lease. Capital Associates, Inc. v. Sally Southland, Inc. 529 So.2d 640, 645 (Miss. 1988); Briscoe's Foodland, Inc. v. Capital Associates, Inc., 502 So.2d 619 (Miss. 1986).
Our inquiry in these cases has focused on whether the lessor functionally occupied the role of a seller in the transaction. Briscoe's Foodland, 502 So.2d at 622, 624. Scrutinizing the plain language of the statutes, we find that § 75-2-314 provides that:
A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. (emphasis added)
Further, § 75-2-104 defines "merchant" as:
a person who deals in goods of the kind or otherwise by his occupation holds himself out to as having knowledge or skill peculiar to the practice or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
There is no evidence in the record to suggest that First Continental held itself out as having knowledge or skill in any area other than leasing and financing.
In Briscoe's Foodland, where we considered an identical factual situation, we characterized the appellant, Capital Associates as a financing lessor which "did not manufacture or sell the equipment and it was not sufficiently like a seller so as to impose Article 2 warranties... ." Id. at 622. Likewise, the evidence in the record indicates that First Continental was also a financing lessor, assuming a role analogous to that of a lending bank with a perfected security interest in a customer's home or office computer.
Looking next at the implied warranty of fitness for a particular purpose, § 75-2-315 provides that:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose. (emphasis added)
By way of Nutt's November 17, 1987, letter and through his prior dealings with *579 the lessor, it is apparent that First Continental knew at the time of the lease agreement that the computer system was intended for use in Nutt's law practice. However, there is no evidence whatsoever that Nutt relied on First Continental to select either the computer system or the vendor of its components. To the contrary, selection of the system and its vendor/supplier, Corporate Systems, Inc., clearly was Nutt's choice. Thus, as a matter of law, neither of the Article 2 implied warranties are applicable.
Although this distinction between two-party and three-party equipment leases is followed in the majority of jurisdictions, it is not without its critics. There is concern that adherence to a strict bright-line distinction between the two could lead to the creation of separate financing arms by vendors or sellers solely for the purpose of circumventing the U.C.C. Note, Uniform Commercial Code  Should the U.C.C. Furnish Rules of Decision in Equipment Leasing Controversies? 7 Miss.C.L.Rev. 209, 224-227 (1987). See also, Capital Associates, Inc. v. Sally Southland, Inc. 529 So.2d 640, 648-649 (Miss. 1988) (D. Lee dissenting). If the evidence had shown that the lessor and seller had entered into another working arrangement or agreement to sell or lease this equipment, our decision might be different.
Accordingly, we limit our holding to those three-party lease transactions where the evidence clearly shows that the lessor is an independent financing lessor, not the functional equivalent of a seller or an agent thereof.

III.
On the day of the hearing on the motion for summary judgment, Nutt filed a motion to strike the affidavit of Elaine Temple, President of First Continental. He asserted that it was deficient because copies of the lease agreement and other appendices referenced in the affidavit were not attached. They had been inadvertently stapled to the motion for summary judgment. Because the written motion was not timely filed pursuant to MRCP 6(d), the defect is waived. Brown v. Credit Center, 444 So.2d 358, 365 (Miss. 1983). Therefore, Nutt's second assignment of error is without merit.

IV.
Reiterating that the question of whether a lease is the functional equivalent of a sale is applicable only to two-party lease transactions and finding as a matter of law that the implied warranty provisions do not apply to an independent financing lessor, we affirm the decision of the Circuit Court and tax the Appellant with the costs of this appeal.
AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
ROY NOBLE LEE, C.J., and BANKS, J., not participating.